**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 37107**

| | |
|---|---|
| STATE OF IDAHO, ) | 2011 Opinion No. 18 |
| ) | |
| Plaintiff-Respondent, ) | Filed: April 8, 2011 |
| ) | |
| v. ) | Stephen W. Kenyon, Clerk |
| ) | |
| COREY SKII REID, ) | |
| ) | |
| Defendant-Appellant. ) | |
| ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Shoshone County. Hon. Fred M. Gibler, District Judge.

Judgment of conviction and sentences for aiding and abetting in two first degree murders, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant. Dennis A. Benjamin argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

---

GRATTON, Chief Judge

Corey S. Reid appeals his judgment of conviction rendered upon a jury verdict for aiding and abetting in two first degree murders, Idaho Code §§ 18-4001, 18-4003(a), and 18-204. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

On August 4, 2008, Reid, Jon Kienholz, Hiram Wilson, Neil Howard, and Cynthia Bewick were at a campground at Dobson Pass outside of Wallace, Idaho. Kienholz shot and killed Howard and Bewick. Reid was charged with aiding and abetting in both murders. Kienholz and Wilson testified against Reid at trial.

According to Kienholz's testimony, he developed a plan to drive to Bolivia and earn a living there selling illegal substances. Reid wanted to go with him because of an upcoming legal proceeding. Howard and Bewick, who were dating, also wanted to go because they thought they had outstanding warrants for their arrest. The group planned to drive Howard's vehicle. On the

1

morning of the murders, Kienholz called a friend and arranged to trade marijuana for a pistol. Reid was in the car and overheard Kienholz's conversation. Kienholz dropped off Reid, bought a .22 caliber pistol, and then returned for Reid. Reid observed the pistol. They then picked up Reid's girlfriend, Kristen Purtill, and drove to the house where Howard and Bewick were staying. It was there that Howard and Bewick told Kienholz that they thought Purtill was going to turn them in on their warrants. Kienholz told Reid about this accusation and both Reid and Purtill became angry. Kienholz obtained a full box of .22 ammunition. The group of five drove to Dobson Pass and stopped at a campsite, almost a mile off of the road, where they started a fire. Kienholz and Reid decided to take a short trip to town, leaving Purtill, Howard, and Bewick at the campsite. However, when Howard got his pocket knife out of the car, Purtill refused to stay. Kienholz, Reid, and Purtill then left in Howard's vehicle. As the three drove away from the campsite, Reid became angry that Howard retrieved his knife and told Kienholz "We have to kill them." They dropped off Purtill in town and picked up Reid's cousin, Wilson. Reid told Wilson that they were going to kill Howard and Bewick. The three then returned to Dobson Pass and parked on the main road. Wilson retrieved the pistol and Reid retrieved the .22 shells to give to Kienholz. The three then walked to the campground and talked about how they would commit the murders. With the pistol hidden below Kienholz's shirt, the three walked into the campground. Kienholz talked to Howard while glancing at Reid. Reid was silently mouthing the words to Kienholz "Come on, do it." Kienholz shot Howard in the head, and then shot Bewick. Kienholz and Wilson then dumped the bodies down a hill. As the three headed back to the car, Reid removed a number of .22 shells from his pocket and discarded them. The three then picked up Purtill and drove to Boise.

According to Wilson's testimony, when Wilson got in the vehicle with Kienholz and Reid, Reid told Wilson that they needed to kill Howard and Bewick. On the drive to Dobson Pass, Kienholz and Reid talked about how they were going to commit the murders. When the vehicle stopped, Reid got the shells out of the glove box, handed Kienholz six shells, and kept a number in his own pocket in case Kienholz missed. As the three were waiting outside the campsite, Reid told Kienholz to just walk into the campsite and shoot them. The three then walked into the campsite, and Kienholz talked to Howard. Wilson did not see Reid mouth any words to Kienholz. Kienholz shot Howard once, kicked Bewick, shot her four times, and then shot Howard again. Wilson and Kienholz then disposed of the bodies. On the walk back, Reid discarded the shells from his pocket. The group traveled to Boise, where Reid assured Kienholz

that it had to be done because Howard was going to kill Purtill. After running out of money, Wilson returned home and turned himself in to the police.

Prior to trial, a hearing was held on Reid's motion in limine to exclude photographs of the victims' bodies. The district court excluded photographs taken at the morgue and allowed some of the photographs taken at the crime scene. At a second hearing, the State asserted it possessed 126 photos of the crime scene and the number of photos to be used at trial had already been reduced. The State made an offer of proof through the testimony of Detective Morgan as to each remaining photograph. Reid objected, claiming the photographs lacked relevance, were cumulative, and unfairly prejudicial. The district court excluded a number of the photographs and at trial the State presented thirty-one photographs from the crime scene.

The jury convicted Reid of aiding and abetting in the first degree murders of Howard and Bewick. For sentencing purposes, the State submitted a transcript of a conversation between Detective Morgan and Ronald Rollins, a prior cellmate of Reid's, in which Rollins described conversations with Reid regarding the murders. The district court imposed concurrent unified sentences of life with thirty years determinate on each count. Reid appeals.

## II.

## DISCUSSION

Reid asserts that his conviction should be overturned because of: (1) erroneous jury instructions on the elements for aiding and abetting first degree murder; and (2) erroneous admission into evidence of graphic photographs of the victims, Exhibits 17, 22, and 27. Reid contends that if his conviction is upheld, he should be resentenced because the district court violated his due process rights by considering at sentencing the transcript of the Rollins' interview.

### A.    Jury Instructions

Reid argues that the jury instructions given, defining the elements of aiding and abetting first degree murder, omitted the requirement that Reid share the mental state of premeditation with Kienholz. Reid did not object to the instruction below. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). A narrow exception exists for those issues that rise to the level of fundamental error. *State v. Perry*, 150 Idaho 209, 228, 245 P.3d 961, 980 (2010):

> If the alleged error was not followed by a contemporaneous objection, it shall only be reviewed by an appellate court under Idaho's fundamental error doctrine. Such review includes a three-prong inquiry wherein the defendant bears

3

the burden of persuading the appellate court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists (without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision); and (3) was not harmless. If the defendant persuades the appellate court that the complained of error satisfies this three-prong inquiry, then the appellate court shall vacate and remand.

Reid must demonstrate that the alleged jury instruction errors rose to the level of fundamental error. As we find the plain-error prong dispositive we need not address the other *Perry* prongs.

Reid argues the error in the instruction--omission of the element of premeditation--plainly exists from criminal statutes, jury instructions, and applicable law. Reid also contends that the record demonstrates his failure to object was not a tactical decision. The State contends that there was no error, much less plain error. The State argues that whether or not premeditation, as asserted by Reid, is required to convict on aiding and abetting, the jury instructions were correct.

For an error to plainly exist there must, of course, be a demonstration of error. Requiring error to be "plain" is "synonymous with 'clear' or, equivalently, 'obvious.'" *Id*. at 225, 245 P.3d at 977 (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). It must be shown "the error is clear under the current law," *id*., or as stated by the Ninth Circuit Court of Appeals, whether the "available authorities provide a clear answer to the question." *United States v. Thompson*, 82 F.3d 849, 855 (9th Cir. 1996). In addition, there must be no need for additional information outside the appellate record. *Perry*, 150 Idaho at 228, 245 P.3d at 980. Further, for the error to be plain there must not be a question as to whether the failure to object was a tactical decision. *Id*. Reid cannot meet this burden of demonstrating plain error.

When reviewing jury instructions, the appellate court must determine whether the instructions, as a whole, fairly and adequately present the issues and state the law. *State v. Hickman*, 146 Idaho 178, 181, 191 P.3d 1098, 1101 (2008). Reid was accused of aiding and abetting murder, I.C. §§ 18-4001, 18-4003(a), and 18-204. Idaho Code § 18-4001 defines murder as "the unlawful killing of a human being . . . with malice aforethought . . . ." Idaho Code § 18-4003(a) states: "All murder . . . which is perpetrated by any kind of willful, deliberate and premeditated killing is murder of the first degree." Idaho Code § 18-204 defines who may be sentenced as a principal for a crime:

All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense or aid and abet in its commission, or, not being present, have advised and encouraged its commission, or who, by fraud, contrivance, or force, occasion the intoxication of another for the purpose of causing him to commit any crime, or who, by threats, menaces, command or coercion, compel another to commit any crime, are principals in any crime so committed.

In this case, the following instructions were given that relate to Reid's claim on appeal.

Instruction 17 stated:

In order for the defendant to be guilty of Count I, Aiding and Abetting First Degree Murder, the state must prove each of the following:
1. On or about the 4th day of August, 2008;
2. In the State of Idaho;
3. Jon Allen Kienholz, Jr., did without justification or excuse,
4. Willfully, unlawfully, deliberately, and
5. With malice aforethought and premeditation,
6. Kill Neil Howard,[1] a human being, and
7. The Defendant, COREY SKII REID, aided and abetted in the commission of the crime.

If the State has failed to prove any of the above, then you must find the defendant not guilty of murder. If you find that all the above have been proven beyond a reasonable doubt then you must find the defendant guilty of murder and decide if the defendant is guilty of first degree murder.

Instruction 23 stated:

All persons who participate in a crime either before or during its commission, by intentionally aiding, abetting, advising, hiring, counseling, procuring another to commit the crime with intent to promote or assist in its commission are guilty of the crime. All such participants are considered principals in the commission of the crime. The participation of each defendant in the crime must be proved beyond a reasonable doubt.

Instruction 24 stated:

To be an aider and abettor, one must share the criminal intent of the principal; there must be a community of purpose in the unlawful undertaking."[2]

---

[1] Instruction 18 was identical to instruction 17 with Cynthia Bewick as the victim.

[2] "To be an aider and abettor one must share the criminal intent of the principal; there must be a community of purpose in the unlawful undertaking." *State v. Scroggins*, 110 Idaho 380, 386, 716 P.2d 1152, 1158 (1985) (quoting *State v. Duran*, 86 N.M. 594, 526 P.2d 188, 189 (N.M. 1974)).

Instruction 25 stated:

> The law makes no distinction between a person who directly participates in the acts constituting a crime and a person who, either before or during its commission, intentionally aids, assists, facilitates, promotes, encourages, counsels, solicits, invites, helps or hires another to commit a crime with intent to promote or assist in its commission. Both can be found guilty of the crime. Mere presence at, knowledge of, acquiescence in, or silent consent to, the planning or commission of a crime is not sufficient to make one an accomplice.

Instruction 26 stated:

> If you unanimously agree beyond a reasonable doubt that Jon Allen Kienholz is guilt of murder and you unanimously agree beyond a reasonable doubt that the state has proven that the murder was willful, deliberate, and premeditated, and you unanimously agree beyond a reasonable doubt that the defendant, COREY SKII REID, aided and abetted in the commission of the willful, deliberate, and premeditated murder, you must find the defendant, COREY SKII REID, guilty of Aiding and Abetting First Degree Murder.
>
> If you unanimously agree beyond a reasonable doubt that Jon Allen Kienholz is guilty of murder but you unanimously agree beyond a reasonable doubt that the state has not proven that the murder was willful, deliberate, and premeditated, and you unanimously agree beyond a reasonable doubt that the defendant, COREY SKII REID, aided and abetted in the commission of the murder, you must find the defendant, COREY SKII REID, guilty of Aiding of Abetting Second Degree Murder.

Instruction 24 and Instruction 25 are taken from Idaho Criminal Jury Instructions 312 and 311, respectively. This Court has stated:

> The pattern ICJI instructions are presumptively correct. *State v. Cuevas-Hernandez*, 140 Idaho 373, 376, 93 P.2d 704, 707 (Ct. App. 2004). The Idaho Supreme Court approved the pattern jury instructions and has recommended that the trial courts use the instructions unless a different instruction would more adequately, accurately, or clearly state the law. *Id*.

*State v. Ruel*, 141 Idaho 600, 602, 114 P.3d 158, 160 (Ct. App. 2005).

Reid claims there was error because the jury was not instructed that it was required to find that Reid shared the mental state of premeditation with Kienholz. Reid acknowledges that the jury instructions required Kienholz to have "acted with premeditation." The jury instructions also required Reid to have the "intent to promote or assist in [the crime's] commission," (Instruction 25), and to share Kienholz's criminal intent. However, he argues that requiring the jury to find that he acted with intent to promote or assist in the crime and to share Kienholz's criminal intent does not include and falls short of requiring a finding that Reid also share

6

Kienholz's premeditation. Consequently, Reid asserts that the instructions did not require him to have "acted with the mental state of premeditation," which he contends was error.

As the State contends, the jury instructions were appropriate under *Scroggins* and consistent with the Idaho Criminal Jury Instructions, which are presumptively correct statements of the law. Whether required or not, the jury was, in fact, told in Instruction 24 that the State must prove that Reid shared Kienholz's mental state by requiring Reid to have "shar[ed] the criminal intent" of Kienholz such that Reid and Kienholz had a "community of purpose in the unlawful undertaking." The referenced criminal intent and community of purpose are identified in Instruction 26 requiring the jury to find that Kienholz "willfully, unlawfully, deliberately, and with malice aforethought and premeditation kill[ed]" the victims.

Reid's attempt to parse premeditation from criminal intent, and, particular to the aider and abettor context, community of purpose in the unlawful undertaking, is without merit. The jury instruction stating that Kienholz must have "willfully, unlawfully, deliberately, and with malice aforethought and premeditation kill[ed]" the victims embodies the articulation of criminal intent under the applicable law. The jury was instructed that "[t]o be an aider and abettor, one must share the criminal intent of the principal." In addition, the jury was instructed that there must have been a "community of purpose in the unlawful undertaking" between Reid and Kienholz. Further defining this intent and purpose, the jury was admonished that "mere presence at, knowledge of, acquiescence in, or silent consent to, the planning or commission" of the crime was not enough. Only if he "intentionally aids, assists, facilitates, promotes, encourages, counsels, solicits, invites, helps or hires another to commit a crime with intent to promote or assist in its commission," could Reid be guilty. The jury instructions were not erroneous, let alone plainly so.

## B. Photographs

Reid contends the trial court erred in admitting three photographs of the victims, Exhibits 17, 22, and 27. He argues that any probative value which they had was substantially outweighed by inflammatory effect. Reid asserts that he offered to stipulate to all facts upon which the photographs may bear and, consequently, any potential relevance was eliminated. Reid further claims that the district court abused its discretion, under I.R.E. 403, in determining that the probative value of the photographs was not outweighed by their prejudicial effect.

We review questions of relevance de novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993). A lower court's determination under I.R.E. 403 will not be disturbed

7

on appeal unless it is shown to be an abuse of discretion. *State v. Enno*, 119 Idaho 392, 406, 807 P.2d 610, 624 (1991); *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct. App. 1989).

Prior to trial, in an effort to undercut any relevance of the photographs, Reid offered to stipulate: (1) that on or about the 4th day of August 2008; (2) in Shoshone County, Idaho; (3) Jon Allen Kienholz, Jr., willfully, unlawfully, deliberately, and with premeditation and with malice; (4) killed and murdered Neil Howard and Cynthia Bewick. He argued that because he was only contesting whether he had the intent to aid Kienholz in the murders, the photographs of their bodies had no relevance. The State objected and the trial court rejected Reid's offer.

It is generally accepted that a prosecutor need not accept a defendant's stipulation to elements of a crime. *State v. Hokenson*, 96 Idaho 283, 286, 527 P.2d 487, 490 (1974); *California v. Scheid*, 939 P.2d 748, 756 (Calif. 1997); *see also Old Chief v. United States*, 519 U.S. 172, 189 (1997). Although *Old Chief* held that a prosecutor must accept a stipulation to a defendant's status as a convicted felon, the Court recognized the general rule that prosecutors need not accept stipulations and stated:

> Evidence . . . has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict.

*Old Chief*, 519 U.S. at 187. Our Supreme Court stated:

> the state must be allowed to offer any relevant evidence in the showing of its case that does not expose the defendant to unnecessary prejudice. The offer of stipulation by the appellant is merely an offer and need not be accepted. To decide otherwise would allow the defendant the option of directing the state's case through the use of timely stipulation.

*Hokenson*, 96 Idaho at 286, 527 P.2d at 490.

The State and the trial court were not required to accept Reid's stipulation. Thus, the State was entitled to present relevant evidence that Kienholz murdered the two victims and dumped their bodies. Requiring a prosecutor to accept a defendant's stipulation would replace persuasive, concrete evidence with a neutral statement from the court. The trial court did not abuse its discretion in refusing the stipulation and the fact of the offer to stipulate does not change the analysis of the relevance of the photographs.

The photographs were relevant to issues which the State was required to prove at trial. While Reid complains that the photographs are minimally relevant to his defense issues, the photographs were relevant to the manner in which the victims died, the time of death, and

8

corroboration of the co-conspirators' testimony.  In a murder trial where the defendant appealed the admission of photographs that depicted the victim with her throat cut, the Idaho Supreme Court stated:

> The trial court has the discretion to admit into evidence photographs of the victim in a homicide case as an aid to the jury in arriving at a fair understanding of the evidence, as proof of the *corpus delecti,* the extent of the injury, the condition of the body, and for their bearing on the question of the degree and atrociousness of the crime.  The fact that the photographs depict the actual body of the victim and the wounds inflicted on her and may tend to excite the emotions of the jury is not a basis for excluding them.

*State v. Beam*, 109 Idaho 616, 620-21, 710 P.2d 526, 530-31 (1985).  The Idaho Supreme Court has observed "the time has come when it should be presumed that a person capable of serving as a juror in a murder case can, without losing his head, bear the sight of a photograph showing the body of the decedent in the condition or place in which found."  *State v. Enno*, 119 Idaho at 406-07, 807 P.2d at 624-25 (internal cites and quotes omitted).  The *Enno* Court recounted numerous Idaho murder cases where the admission of graphic photographic evidence was upheld.  There, Enno complained that a photograph of the victim at the crime scene and three other photographs used by the pathologist to explain the extent of the victim's injuries were not necessary because the testimony of the pathologist was sufficient to explain why the victim had died.  The Court recognized that the trial court had only allowed four out of the ten photographs offered by the State and the trial court conducted the required balancing of the probative value with the prejudicial effect.  The Court held the trial court did not abuse its discretion in admitting the photographs.  *Id.* at 407, 807 P.2d at 625.

Reid claims Exhibits 17, 22, and 27 were admitted in error under I.R.E. 403 because the unfair prejudice significantly outweighed their probative value.  Reid contends that the only issue of relevance for trial was whether Reid shared Kienholz's mental state and, unless a picture could shed light on Reid's state of mind, it would have little or no probative value, but strong inflammatory effect.  Exhibit 17 showed the upper half of Howard's body, on its back, with the arms outstretched, and a bloody head tilted to the side.  Reid suggests that the picture is similar to the depiction of Christ on the cross and that it, together with Detective Morgan's testimony, which described Howard's body lying in a cross position, injected into the trial "deeply seated religious emotions."  Exhibit 22 is a close-up of Howard's head, which showed the bullet hole at his temple, blood across his face, and fly larvae.  Exhibit 27 is a close-up of Bewick's head, which shows her head caked in dry blood and her mouth covered in fly larvae.  Reid contends

that the photos of Howard's and Bewick's faces being eaten by insects evoke powerful emotions that would cause an inflammatory effect and outweigh any probative value.

The State was required to prove that on or about August 4, 2008, in the State of Idaho, Kienholz did without justification or excuse, willfully, unlawfully, deliberately, and with malice aforethought and premeditation, kill the two victims, and Reid aided and abetted in the commission of the crime. Additionally, under I.C. § 19-2117, independent evidence was required to corroborate the testimony of Reid's accomplices, Kienholz and Wilson. These photographs were used in conjunction with the testimony from Detective Morgan to describe the crime scene, identity, manner of death, and time of death. Detective Morgan testified that he had training and experience in estimating the time of death, based on the extent a body had decomposed or the insect activity on the body. Based on the decomposition of the bodies and insect activity as of August 8, 2008, as shown in Exhibits 22 and 27, Morgan estimated the bodies had been there for a few days, not several weeks. The photographs corroborated the testimony of Kienholz and Wilson of the fatal injuries and how they attempted to dispose of the bodies. Further, the trial court exercised its discretion and excluded a number of the photographs prior to trial. The photographs are undoubtedly gruesome, but this was a gruesome murder trial. Photographs of dead victims are inherently prejudicial. But, before their admission is precluded, they must be unfairly prejudicial. Reid has failed to demonstrate the trial court abused its discretion in admitting Exhibits 17, 22, and 27.

## C. Evidence at Sentencing

Reid claims that the district court violated Reid's due process rights by considering, at sentencing, a transcript of a conversation between Ronald Rollins, a cellmate with Reid, and Detective Morgan. In the interview, Rollins recounted conversations with Reid in which Reid described the murders and demonstrated a lack of any remorse. The State argues that Reid did not raise this objection below and, therefore, Reid must demonstrate fundamental error which he cannot do. In response, Reid contends that he did object below and that, even if he did not, the error was fundamental.

The threshold question here is whether Reid preserved his objection in the trial court. At sentencing, the district court began by telling the parties it had reviewed the PSI and the Rollins transcript. The State used the statements from Rollins to point out Reid's culpability and lack of remorse. In regard to Rollins' statements, Reid's counsel argued:

10

The -- I don't want to dwell on this Ronnie Rollins, but it's -- it's disgusting. I think it's very poor form to bring that up today. I think it's inflammatory, and I think it's insulting to the families here today. Ronald Rollins doesn't have little credibility -- he has no credibility while giving the statement in jail to get out of jail. None of the things he said was corroborated by Jon Kienholz or Hiram Wilson there. None of it happened. And I think it's very poor form to bring that up today. It's a complete lie and fabrication, inconsistent with every statement of every witness that's recorded in this case, including Mr. Reid's earliest statement. And it was all for a plea arrangement with Mr. Rollins that never materialized from the State.

The statements above do not constitute an objection, but instead are arguments regarding its usefulness. Therefore, we turn to fundamental error and because Reid has not demonstrated error we need to go no further in the *Perry* analysis.

Reid contends that consideration at sentencing of the Rollins' interview was a constitutional due process violation because the information was not credible. In *State v. Dunn*, 134 Idaho 165, 172, 997 P.2d 626, 633 (Ct. App. 2000), this Court stated:

A judge may consider a broad range of information when fashioning an appropriate sentence. *Williams v. New York*, 337 U.S. 241 (1949); *State v. Morgan*, 109 Idaho 1040, 1042, 712 P.2d 741, 743 (Ct. App. 1985). A defendant is denied due process when the sentencing judge relies upon information that is materially untrue or when a judge makes materially false assumptions of fact. *State v. Gawron*, 124 Idaho 625, 627, 862 P.2d 317, 319 (Ct. App. 1993).

In *United States v. Petty*, 982 F.2d 1365, 1369 (9th Cir. 1993), the court stated that due process requires that hearsay bear some minimal indicia of reliability in order to be considered at sentencing, and a defendant cannot be sentenced on materially incorrect information. *Id*.

In order to demonstrate error, Reid must show that the Rollins' interview information was materially untrue and/or incredible. The interview with Rollins occurred in January 2009, prior to the jury trial in this case held in May 2009. Rollins and Reid were held in the Shoshone County Jail when Reid allegedly told Rollins about the murders. The transcript is somewhat lengthy, but as an example, Rollins stated:

Well when you tell a story, you know, like the girl [Reid] discussed kicking the girl, [Wilson] kicking the girl in the face and thought it was funny, thought her jaw to the side and her crying and screaming whatever she was for mercy and pulling her hair out was comical for some reason. I don't see any humor in it, but he thinks it's funny. I mean he literally has a grin on his face and he has that weird chuckle telling the whole story the whole time. Every time I hear that story he laughs like it's the same thing. And when he tells it, he thinks in his mind he's not getting anything. . . .

11

Later Rollins stated:

> I don't know if this is true, he said that the girl didn't die from the gunshot wound she actually bled to death from the mouth. I don't know if that's true or not. He thought that was pretty hilarious that she wasn't dead when they dropped the body that she actually bled out he claims.

Detective Morgan specifically asked Rollins if Reid showed any remorse.

| | |
|---|---|
| Morgan: | Did he ever show any remorse? |
| Rollins: | Not one time. That's what sickened me. |
| Morgan: | He never said that he was sorry they were dead or . . . |
| Rollins: | Nope. |
| Morgan: | . . . or wish it never happened? |
| Rollins: | He pretty much says they're punks. He said that's why they shot em because they were punks and they, what was the word, uh geeze, he used the words describing them for not giving them the car. . . . |

Reid claims that Rollins lacked any credibility as evidenced by a number of inconsistencies between Rollins' story and the testimony later given by Kienholz and Wilson at trial, including: (1) who may have kicked Bewick; (2) whether her jaw was displaced; (3) whether she pulled her own hair; (4) prior attempts to get a gun; (5) motive to steal Howard's car and; (6) planning of the murders two to three days ahead instead of on the day of the murders.

> In regard to the Rollins interview, the district court stated:
>
> > The State submitted documentation in support of sentencing consisting primarily of the transcript of the interview of Ronald Rollins, Jr., that was taken in jail. And [defense counsel] quite properly has pointed out that we have nothing to judge the credibility of Mr. Rollins. He's not here. He's not subject to cross-examination. And I recognize that and recognize that, without live testimony and cross-examination, the statements should be taken with a grain of salt.
> >
> > But one thing that occurred to me, as I was looking through the statements, was that the statements were made prior to the trial or any real discussion of the facts of the case. And Mr. Rollins did have a good knowledge of the facts of the case based upon what he stated that Mr. Reid had told him while they were in jail together. And so, recognizing that he was not subject to cross-examination, there is some evidence just from the statements, themselves, that they do have an element of credibility because he has details that would not have been known to him except had they been given him by Mr. Reid as he stated. And I'm referring there to elements that -- or details of the facts that came out during the trial.

Although there are some inconsistencies, there are also, as the district court indicated, consistencies between what Rollins knew and facts that came out at trial--months after the

interview--including that Reid was planning to flee from his charges to Bolivia, that marijuana was used to buy the .22 caliber pistol, that Reid instigated Kienholz to shoot the victims, that Kienholz shot both victims in the head, the order of the shootings, and the location of the disposed bodies.

The credibility of jailhouse informants, particularly those who are not subject to cross-examination, is a serious issue, although more so at trial than sentencing. The district court recognized that Rollins' credibility and the reliability of his story was an issue. The district court determined that although it could not assess Rollins' credibility in general, the similarity of facts recounted by Rollins and facts adduced months later at trial gave credibility to the information. In addition, the district court expressed appropriate caution in the usefulness of the information. While there were inconsistencies, Reid has not proven that the information was materially untrue such as to rise to the level of a due process violation. Thus, Reid has not demonstrated error.

## III.
## CONCLUSION

Reid has failed to demonstrate that the jury instructions were erroneous. The district court did not abuse its discretion in admitting photographs of the victims' bodies over Reid's objection. The district court did not violate Reid's due process rights by considering the Rollins transcript at sentencing. Reid's judgment of conviction and sentences are affirmed.

Judge LANSING and Judge GUTIERREZ **CONCUR.**