**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 48022**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: August 10, 2021 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| JASON PAUL LACAS, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Nancy A. Baskin, District Judge.

Judgment of conviction for felony violation of a no-contact order, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Jason Paul Lacas appeals from his conviction for felony violation of a no-contact order. Lacas claims that the district court committed reversible error by permitting inquiry into the crime for which he was on probation, by admitting his prior judgment of conviction for misdemeanor violation of a no-contact order, and in instructing the jury. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

After stopping the vehicle Lacas was driving for traffic violations, an officer discovered an active no-contact order against Lacas that named his passenger (his long-time girlfriend) as the protected party. When questioned, Lacas claimed he was unaware of any active no-contact order. While waiting for dispatch to confirm the status of the no-contact order, the officer obtained evidence that Lacas was intoxicated and that there were open containers of alcohol and

1

marijuana in his vehicle. After confirming the no-contact order was still active, the officer arrested Lacas.

The State charged Lacas with felony violation of a no-contact order, Idaho Code § 18-920; possession of an open container of alcohol in a motor vehicle, I.C. § 23-505; misdemeanor driving under the influence, I.C. § 18-8004; and misdemeanor possession of a controlled substance, I.C. § 37-2732(c). Lacas pled not guilty to all the charges. During the ensuing jury trial, Lacas testified that he did not know he was subject to an active no-contact order as he mistakenly believed all prior no-contact orders involving his girlfriend were terminated or expired. Lacas further testified that this mistaken belief arose, in part, because his probation officer had authorized contact with his girlfriend and their daughter. Over Lacas's relevance and Idaho Rule of Evidence 403 objections, the district court allowed the prosecutor to ask Lacas whether his probation arose from a prior violation of the same no-contact order he was on trial for violating and, after he denied such, the district court permitted the admission of a copy of a judgment of conviction indicating Lacas was on probation for misdemeanor violation of a no-contact order when the traffic stop occurred.

After Lacas concluded his case-in-chief, he moved for a judgment of acquittal, arguing that the State failed to present evidence that he "had notice of the no-contact order." The district court denied the motion and, over Lacas's objection, instructed the jury on the elements of violation of a no-contact order using a modified version of Idaho Criminal Jury Instruction 1282 that allowed the jury to find Lacas guilty if he "had notice of the existence of the [no-contact] order" before contacting his girlfriend. Ultimately, the jury found Lacas guilty of all the charged offenses. Lacas appeals.[1]

## II.

### STANDARD OF REVIEW

The decision to admit evidence is generally reviewed for an abuse of discretion. *State v. Almaraz*, 154 Idaho 584, 590, 301 P.3d 242, 248 (2013). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the

---

[1] On appeal, Lacas challenges only his conviction for felony violation of a no-contact order. He does not challenge his three misdemeanor convictions.

2

specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018). We review questions of relevance de novo. *State v. Jones*, 167 Idaho 353, 358, 470 P.3d 1162, 1167 (2020); *State v. Aguilar*, 154 Idaho 201, 203, 296 P.3d 407, 409 (Ct. App. 2012).

Whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct. App. 1993).

## III.

## ANALYSIS

Lacas argues that the district court erred by permitting inquiry into the crime for which he was on probation, admitting his prior judgment of conviction for misdemeanor violation of a no-contact order, and instructing the jury with a modified version of ICJI 1282. The State responds that the district court's evidentiary rulings were correct; that Lacas has not preserved his challenge to the jury instructions; and that, even if he did, Lacas has not shown error in the instructions. We hold that Lacas has failed to establish reversible error.

### A. Probation Evidence

Lacas contends that evidence establishing the crime for which he was on probation was irrelevant and the risk of unfair prejudice it carried substantially outweighed its probative value. Evidence that is relevant to a material issue concerning the crime charged is generally admissible. *State v. Garcia*, 166 Idaho 661, 670-71, 462 P.3d 1125, 1134-35 (2020). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401; *Garcia*, 166 Idaho at 670, 462 P.3d at 1134. Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010).

At trial, Lacas did not challenge the existence of a no-contact order against him that named his girlfriend as the protected party. Rather, Lacas's defense to the violation of a no-contact order charge was that, when he was discovered driving with his girlfriend, he was unaware the no-contact order was still in force. In support of this defense, Lacas testified to his

3

belief that his probation officer had granted Lacas's request for permission to see his girlfriend and daughter. Lacas testified under direct examination that:

> My first request by (sic) being put on probation with my probation officer, as everything has to go through him--and that was my first request after not seeing my child, my seven-year-old, [C.], daughter, and [girlfriend] for ten months.
>
> And so my first request was that, and it was approved. And along with that, knowing that there was--that [the no-contact order] expired, I wasn't aware of this other--or that's all I've got.

During a sidebar following Lacas's direct examination, the State gave notice that it intended to inquire into why Lacas was on probation. The State further indicated its belief that Lacas was on probation for a prior violation of the same no-contact order he was on trial for violating. The district court overruled Lacas's relevance and I.R.E. 403 objections, concluding that Lacas's testimony explaining why he believed he was not subject to a no-contact order rendered evidence of why he was on probation relevant and that such evidence was "not unduly prejudicial" as Lacas had testified to his probation status and both he and his girlfriend had testified about "numerous no-contact orders between the parties." Accordingly, the district court allowed the State to inquire into why Lacas was on probation without going "further into collateral issues related to the case" from which that probation arose. Subsequently, the State cross-examined Lacas as follows:

| [Prosecutor]: | I want to talk a little bit--you mentioned being in jail. You mentioned probation. It's true that you were on probation at the time you were pulled over . . . correct? |
| [Lacas]: | Yes, Ma'am. |
| [Prosecutor]: | And it's also true that you were on probation for a violation of a no-contact order; is that correct? |
| [Lacas]: | No. No, I wasn't on probation for violation of a no-contact order. I was on probation for possession. |
| [Prosecutor]: | If the court records indicate that you were also on probation for violation of a no-contact order, do you have reason to doubt that? |
| [Lacas]: | Yeah. I was on--yeah. |
| [Prosecutor]: | On unsupervised probation? |
| [Lacas]: | No. |
| [Prosecutor]: | For the violation of the no-contact order? |
| [Lacas]: | No. I was on probation for a possession charge . . . . |

On appeal, Lacas challenges both the district court's relevancy and I.R.E. 403 analyses of the evidence establishing why he was on probation. As set forth below, both challenges fail.

According to Lacas, evidence that he was on probation for violating a no-contact order was relevant only to his propensity to commit crimes. We disagree. As discussed above,

4

Lacas's defense to the violation of a no-contact charge was that he believed the no-contact order he allegedly violated was not in force. Lacas further testified that this belief arose, in part, from his probation officer approving contact with Lacas's girlfriend and child. Evidence that Lacas was on probation for violating a no-contact order naming his girlfriend as the protected party reduces the likelihood that his probation officer actually approved Lacas's request to see his girlfriend and, at the same time, undercuts his veracity. Thus, evidence tending to show the falsity of Lacas's factual claim was relevant to his defense and general credibility. Accordingly, the district court did not err in concluding that Lacas's testimony explaining why he believed he was not subject to a no-contact order rendered the evidence of why he was on probation relevant.

Lacas's challenge to the district court's I.R.E. 403 analysis similarly fails. Evidence, although relevant, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. I.R.E. 403. A trial court's determination under I.R.E. 403 will not be disturbed on appeal unless it is shown to be an abuse of discretion. *State v. Enno*, 119 Idaho 392, 406, 807 P.2d 610, 624 (1991); *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct. App. 1989). As stated above, review of a trial court's discretionary decision entails consideration of whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Herrera*, 164 Idaho at 270, 429 P.3d at 158.

Lacas faults the district court for allegedly failing to exercise reason when balancing the probative value of evidence showing why he was on probation against the risk of unfair prejudice. Specifically, Lacas contends the district court "failed to identify any probative value" in the challenged evidence and also erroneously determined that it carried "no risk of unfair prejudice." Both contentions are meritless. As the earlier discussion of Lacas's relevance challenge shows, the district court correctly determined that Lacas's testimony rendered evidence of why Lacas was on probation probative of both his defense and his general credibility. Regarding the risk of unfair prejudice the evidence carried, the district court observed that the evidence was not "so unfairly prejudicial" as to compel exclusion--not that it held *no* risk of unfair prejudice. When evaluating the risk of unfair prejudice the challenged evidence posed, the district court recognized that Lacas had already revealed to the jury his probation status and the existence of numerous no-contact orders protecting his girlfriend. Although evidence that Lacas

5

was on probation for *violating* one of those no-contact orders carried with it an additional risk that the jury might infer he had a propensity for committing such crimes, we cannot say that the district court abused its discretion by determining that the probative value of the evidence was not substantially outweighed by the risk of unfair prejudice.

**B.  Prior Conviction**

Lacas also contends that the district court erred by admitting a copy of a judgment of conviction indicating he had been convicted of and placed on probation for misdemeanor violation of a no-contact order to rebut his testimony regarding why he was on probation.  Lacas argues that the judgment was relevant only to show he had a propensity to violate no-contact orders because a purported amended judgment "unambiguously showed that [he] was *not* on probation for that conviction . . . when he was pulled over while driving with his girlfriend." Thus, resolving Lacas's challenge to the admission of his judgment of conviction requires this Court to construe the language of the purported amended judgment.

The interpretation of decrees or judgments is generally subject to the same rules applicable to construction of contracts or other written documents.  *See McKoon v. Hathaway*, 146 Idaho 106, 109, 190 P.3d 925, 928 (Ct. App. 2008).  Legal documents reasonably susceptible to different meanings are ambiguous, and the interpretation of such documents is a question of fact.  *Id.*  The interpretation of an unambiguous document is a legal question.  *Suchan v. Suchan*, 113 Idaho 102, 106, 741 P.2d 1289, 1293 (1986).  Unambiguous documents are to be construed according to the plain, ordinary meaning of their text.  *C & G, Inc. v. Rule*, 135 Idaho 763, 765, 25 P.3d 76, 78 (2001).  Whether a document is ambiguous is a legal question.  *Id.*

As discussed above, on cross-examination, Lacas denied being on probation for violating a no-contact order.  To rebut Lacas's denial, the prosecutor sought permission to introduce Exhibit 6, a packet of documents that included a copy of a judgment of conviction indicating Lacas had been convicted of misdemeanor violation of a no-contact order in May 2018.  The judgment of conviction was a form document composed largely of boilerplate with check boxes and blanks that the trial court completed by hand to provide case identifying information and designate the sentence imposed.  Exhibit 6 indicated, among other things, that Lacas pled guilty to misdemeanor violation of a no-contact order and was placed on probation for a term of 24 months.  Lacas objected to Exhibit 6, arguing it was irrelevant, unfairly prejudicial, cumulative, and potentially confusing to jurors.  To support these objections, Lacas cited a document he

6

claimed was an "amended judgment" entered in October 2018 that bore the same case number as Exhibit 6, but indicated Lacas had been sentenced only to 60 days in jail.

The district court overruled Lacas's objections, stating:

> The State seeks to admit what is going to be marked as State's Exhibit 6 as rebuttal evidence. Simply the admission of the document, which is a copy of the statement of rights felony, statement of rights violation of no-contact order, the judgment, and the notification of subsequent penalties.
> . . . .
> I can't make out the name of the judge, but it is signed by a judge, and it does indicate clearly that [Lacas] was placed on supervised probation for 24 months in this criminal case.
> . . . .
> The defense has noted in looking at, I presume the [electronic court] file, that there was an amended judgment issued on October 4th, 2018 . . . . It is for the same case number, CR14-18-6824. It does have in large letters "PV," that [Lacas] pleaded guilty, conviction is entered, and that he was ordered to serve 60 days in jail.
> It doesn't indicate that--it doesn't indicate to this Court that the probation was terminated. It just appears to be--in my best judgment, appears to be a disposition of a probation violation. And it doesn't say that--there's nothing handwritten on here that the probation term was terminated.
> . . . .
> So I'm not sure reading this document that it shows or doesn't show--well, I'm not sure it shows that [Lacas's] probation was, in fact, terminated. I don't think it shows that.

Consequently, the district court concluded that Exhibit 6 was "relevant for purposes of impeachment" and "whether [Lacas] had reasonable notice that he was" subject to a "valid and outstanding" no-contact order when stopped by police. Based on this relevance, the district court further concluded that Exhibit 6, though prejudicial, was not "unfairly prejudicial." Accordingly, the district court admitted Exhibit 6, noting that Lacas was "free to put on whatever rebuttal evidence" he wanted in response. Despite the admission of Exhibit 6, Lacas did not seek to admit a copy of the purported amended judgment into evidence.

On appeal, Lacas asserts that the district court's conclusion "that the entry of the Amended Judgment did not terminate" his probation was legal error. This argument, however, conflicts with the position Lacas took below. When arguing against the admission of Exhibit 6, Lacas acknowledged that the purported amended judgment was "pretty cryptic" and he did not know if the document altered his probation. Concurring with Lacas, the district court determined

7

that the purported amended judgment appeared "to be a disposition of a probation violation,"[2] but was unsure whether the document showed that Lacas's probation was terminated. Notwithstanding Lacas's change in position on appeal, we will address Lacas's argument because the district court determined that the amended judgment did not indicate that his probation had been terminated. *See State v. DuValt*, 131 Idaho 550, 553, 961 P.2d 641, 644 (1998) (observing that issues argued or decided by a trial court may be raised on appeal). As set forth below, Lacas's challenge to the admission of Exhibit 6 fails.

Exhibit 6 indicated that Lacas had been placed on probation for 24 months for misdemeanor violation of a no-contact order. Thus, the document was ostensibly relevant to whether Lacas was on probation 16 months later when officers discovered him driving with his girlfriend. Lacas's claim that Exhibit 6 was superseded by the purported document *titled* "Amended Judgment" is inaccurate. The purported amended judgment is the same form document used in Exhibit 6, but with different handwritten notations. The words "Amended Judgment" appear only near a barcode that was apparently added by the clerk of court in the lower, right-hand corner of the document. More importantly, Exhibit 6 indicates Lacas pled guilty to the charge of "No Contact Order Violation--Misd." and was ordered to pay fines, court costs, public defender reimbursement, and serve 180 days of jail time. Exhibit 6 further indicates that Lacas received credit for 12 days served, the remaining 158 days of jail time were suspended, and Lacas was placed on probation for 24 months. Despite bearing the same case number as Exhibit 6, the purported amended judgment also indicates that Lacas pled guilty to an "NCO Violation" with the letters "PV" written on the top of the document. Additionally, the purported amended judgment imposes *only* a sentence of 60 days of jail time with credit for 60 days served, while the portions of the document relating to fines, fees, costs, and probation are blank. Finally, the purported amended judgment does not expressly terminate Lacas's probation and the check box to indicate that a copy of the document was sent to Lacas's probation officer is unmarked. If the purported amended judgment was intended to alter or terminate Lacas's probation, it is unclear why the document would not be forwarded to his probation officer. Under these circumstances, we cannot say that it was error for the district court to conclude that

---

[2] The prosecutor represented to the district court that Lacas "pled guilty to a probation violation" on the day the purported amended judgment was entered.

the purported amended judgment did not show that Lacas's probation had been terminated. Consequently, Lacas has failed to show that the district court erred by admitting Exhibit 6.

## C.     Jury Instructions

Lacas argues that the district court erred by instructing the jury with a modified version of the pattern elements instruction for the offense of violation of a no-contact order. Instead of providing the jury with a verbatim recitation of the pattern elements instruction, the district court instructed the jury that the State had to prove Lacas had notice of "the existence" of the no-contact order before he contacted his girlfriend. According to Lacas, the modified instruction misstates the law and prevented the jury from considering his defense.

A trial court presiding over a criminal case must instruct the jury on all matters of law necessary for the jury's information. I.C. § 19-2132; *Severson*, 147 Idaho at 710, 215 P.3d at 430. In other words, a trial court must deliver instructions on the rules of law that are "material to the determination of the defendant's guilt or innocence." *State v. Mack*, 132 Idaho 480, 483, 974 P.2d 1109, 1112 (Ct. App. 1999). This necessarily includes instructions on the "nature and elements of the crime charged and the essential legal principles applicable to the evidence that has been admitted." *State v. Gain*, 140 Idaho 170, 172, 90 P.3d 920, 922 (Ct. App. 2004).

At issue in this case is the district court's modification of the pattern elements instruction for violation of a no-contact order. This Court has held that the pattern ICJI instructions are presumptively correct. *State v. Weeks*, 160 Idaho 195, 198, 370 P.3d 398, 401 (Ct. App. 2016). The Idaho Supreme Court approved the pattern jury instructions and has recommended that the trial courts use the instructions unless a different instruction would more adequately, accurately, or clearly state the law. *State v. Reid*, 151 Idaho 80, 85, 253 P.3d 754, 759 (Ct. App. 2011). Idaho Criminal Jury Instruction 1282 lists the elements of the crime of violation of a no-contact order as follows:

1.      On or about [date]
2.      in the state of Idaho
3.      the defendant [name]
4.      had been [charged with] [or] [convicted of] [      ], and
5.      a no contact order had been issued by a court or by an Idaho criminal rule forbidding the defendant from having contact with [name of person], and
6.      the defendant had contact with [name of person] in violation of the order, and
7.      before such contact the defendant had notice of the order.

After Lacas moved for a judgment of acquittal arguing that the State had not presented evidence that he was served with or signed the no-contact order, the district court proposed modifying the

9

last element of the pattern instruction to require the State to prove that, "before such contact, [Lacas] had notice of the existence of the order." Lacas objected, arguing that "knowledge of the existence of the no-contact order is not sufficient and the State has to prove . . . that [he] was either served or signed the no-contact order." The district court overruled Lacas's objection and instructed the jury using its modified version of ICJI 1282.

Before reaching the substance of Lacas's challenges to the jury instruction, we must first address the State's argument that Lacas's challenges are unpreserved. Appellate court review is limited to the evidence, theories, and arguments that were presented below. *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017). Lacas asserts that his argument on appeal "that knowledge of the *existence* of a no-contact order is not sufficient to prove the notice element" is identical to the objection to the modified jury instruction he asserted below. This assertion does not withstand scrutiny. Before the district court, Lacas argued that the district court's modified elements instruction was erroneous because it could be satisfied without proof he was served with or signed the no-contact order. Lacas has abandoned this argument on appeal, asserting instead that the modified elements instruction misstated the law and "effectively foreclosed" his mistake-of-fact defense by allowing the jury to find him guilty even if he was unaware the no-contact order was still effective. This Court will not hold that a trial court erred on a party's position on an issue that the trial court lacked the opportunity to address. *State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019). As Lacas's arguments below did not provide the district court with the opportunity to rule on the issue he raises on appeal, his appellate arguments are unpreserved.

Even if Lacas had preserved his challenges to the jury instruction, they would fail on the merits. Whether a jury instruction is erroneous depends upon how a reasonable juror would have interpreted the instruction. *State v. Skunkcap*, 157 Idaho 221, 228, 335 P.3d 561, 568 (2014). We are not convinced that a reasonable juror would have drawn any legally significant distinction between "notice of the existence of the order" and "notice of the order." The only substantive difference between these two phrases is the word "existence." According to Merriam-Webster's Collegiate Dictionary, the word "existence" means "the state or fact of having being." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 438 (11th ed. 2003). Applying this definition, the district court's modified elements instruction permitted the entry of a guilty verdict only if the jury found that Lacas had notice the no-contact order forbidding him from

contacting his girlfriend was in being before contacting her. Having notice that an order *is in being* does not differ from having notice of the order in a legally significant way. Thus, the district court's modified elements instruction did not misstate that law. This conclusion comports with our prior decision where we treated the term "notice of the existence of the no-contact order" as being synonymous with "notice of the no-contact order." *See State v. Hochrein*, 154 Idaho 993, 999-1001, 303 P.3d 1249, 1255-57 (Ct. App. 2013).

Lacas further contends that the modified elements instruction permitted the jury to find him guilty based upon his testimony that he knew the no-contact order prohibiting contact with his girlfriend *existed* in the past. Beyond conclusory assertions, Lacas does not explain how the phrase "notice of the order" would permit the jury to consider whether the order was terminated or expired while "notice of the existence of the order" does not. To the contrary, the plain, ordinary meaning of the words of the modified instruction cannot sustain Lacas's interpretation. The phrase "notice of the existence of the order" would not reasonably be understood in context as allowing a finding of guilt based upon Lacas's awareness of a no-contact order that existed at some point but had subsequently expired or been terminated before he contacted his girlfriend. To the extent that Lacas's mistaken belief the no-contact order was not in force would negate notice of the order, it would also negate notice of the existence of the order. Thus, contrary to Lacas's argument on appeal, the modified elements instruction did not foreclose his mistake-of-fact defense. Accordingly, Lacas has failed to show that the district court's modified elements instruction for violation of a no-contact order was erroneous.

## IV.

## CONCLUSION

The district court did not err by allowing the State to inquire into why Lacas was on probation or by admitting a copy of Lacas's prior judgment of conviction for misdemeanor violation of a no-contact order as rebuttal evidence. Additionally, Lacas failed to preserve the argument that the district court erred by modifying the elements instruction for violation of a no-contact order. Accordingly, Lacas's judgment of conviction for felony violation of a no-contact order is affirmed.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.