IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 39622

| STATE OF IDAHO, | ) | 2014 Opinion No. 97 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: November 20, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JONATHAN EARL FOLK, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Darren B. Simpson, District Judge.

Judgment of conviction for lewd conduct with a minor child under sixteen, vacated, and case remanded.

Nevin, Benjamin, McKay & Bartlett LLP; Deborah Whipple, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Daphne J. Huang, Deputy Attorney General, Boise, for respondent.

GUTIERREZ, Chief Judge

Jonathan Earl Folk appeals from his judgment of conviction after a jury found him guilty of lewd conduct with a minor child under sixteen. For the reasons that follow, we vacate the judgment of conviction and remand the case for further proceedings.

I.

FACTS AND PROCEDURE

This is the second direct appeal for this case. In *State v. Folk*, 151 Idaho 327, 256 P.3d 735 (2011), the Idaho Supreme Court vacated the judgment of conviction and remanded the case.[1] Subsequently, a second trial was conducted in 2012, and this appeal arises out of that trial. The Idaho Supreme Court summarized the relevant facts in the first appeal:

---

[1] The Idaho Supreme Court vacated Folk's prior judgment of conviction because the district court incorrectly responded to a jury's note during deliberations. The district court's response may have permitted the jury to find Folk guilty of conduct that did not constitute the

1

On December 25, 2007, at about 5:30 p.m., the mother of three minor children (Mother) arrived home after running an errand and went into the kitchen to help her grandmother finish preparing Christmas dinner. As she was walking to the kitchen, Jonathan Folk (Defendant) was in the living room. He had come over to pick up a house guest. After about ten to fifteen minutes, Mother walked into the living room and asked her husband where their five-year-old son (Child) was. He said that he thought Child was in his bedroom. Mother walked to Child's room, and as she was nearing the open door to the room she heard Child say, "That's gross." As she walked into the room, she saw Child lying on his back on the bed and Defendant kneeling down in front of Child with Child's legs around Defendant and his hands on Child's hips. The bed was a small child's bed, about ten inches off the floor. Mother asked what they were doing, and both Child and Defendant said they were just playing. Both Defendant and Child were fully clothed, and it did not appear that either of them had just pulled or zipped their pants up. Mother did not see any signs of any type of sexual act by Defendant. Defendant stood up and walked out of Child's room, and then returned and sat on the floor while Child picked up his toys pursuant to Mother's instructions. Defendant and the guest left about one and one-half hours later. At about 4:00 a.m. that night, Child awakened Mother and stated that he had just had a nightmare. Mother asked what it was about, and Child responded that it was about what that guy did to Child last night. Mother asked what guy, but Child would not answer. Later that morning, Mother telephoned the police and then asked Child what had happened last night. Child answered that Defendant had placed his mouth on Child's penis.

*Folk*, 151 Idaho at 331, 256 P.3d at 739. As a result of the 2012 trial, there were some factual distinctions, as compared to the facts summarized by the Idaho Supreme Court. The grandmother testified that the child came to her room first after having the nightmare, but the child "didn't really say too much to [her] about the dream." She then testified that she and the child went to the mother's room. The mother testified that the child came to her room around 2:30 a.m. or 3:00 a.m., instead of 4:00 a.m. Most importantly, the mother testified that the child did tell her the name of the "bad guy," right after the child had the nightmare, saying, "Jon, Jonathan [Folk]."

Before the 2012 trial commenced, Folk filed a pro se motion in limine to exclude testimony relating to why the mother called the police. Amongst the statements challenged by

crime of lewd conduct. *State v. Folk*, 151 Idaho 327, 339-42, 256 P.3d 735, 747-50 (2011). The Court also addressed whether the State violated Folk's right to a speedy trial, Folk's right to confront his accuser, and Folk's right to represent himself.

Folk were the hearsay statements by the child telling the mother that he had a nightmare about what the bad guy had done to him the night before and identifying Folk as the bad guy (collectively, the child's statements). After the State opposed the motion, the district court determined that the child's statements were admissible under the excited utterance exception to the hearsay rule. Also before the start of the 2012 trial, the State filed a notice of its intent to use three prior bad acts, as defined under Idaho Rule of Evidence 404(b), against Folk. Folk objected to the intended introduction of this evidence, and the district court conducted a hearing. Relevant to this appeal, the district court determined that two prior convictions for molesting a child, one resulting from a 1992 incident and one resulting from a 1999 incident, were relevant to prove motive and intent. The district court also held that the conviction arising out of the 1999 incident was relevant to prove opportunity.

The case proceeded to trial. The child testified as to his memory of the events. Folk proceeded to cross-examine the child and impeach the child with statements the child had made during an interview with a detective, during the preliminary hearing, during the first trial, and during an interview with a licensed social worker at a center approximately six months before the 2012 trial.

Over Folk's objection, the State presented testimony of the male victim from the 1992 incident. The 1992 victim stated that he was around four years old when he was staying at a hotel with his family. He had been at the hotel pool with his mother one day when he met Folk at the pool. The 1992 victim's mother left the boy in Folk's care at the hotel pool, after Folk volunteered to watch the boy. Folk and the boy went into the hot tub; Folk pulled down the boy's swim trunks and bounced the boy on his lap in the hot tub. On another day, Folk and the boy went to Folk's hotel room. Folk told the boy to take off his swim trunks, which the boy did, and then Folk told the boy that he needed to capture "pictures of [his] private parts for something." Finally, while Folk and the boy were in the hot tub on another occasion, Folk went underwater, pulled down the boy's swim trunks, and put his mouth on the boy's penis. During the testimony at the 2012 trial, the prosecutor admitted into evidence and then published to the jury a photograph of the boy taken around the time of the lewd conduct. Additionally, the prosecutor admitted into evidence a certified copy of the judgment of conviction against Folk that arose out of the 1992 incident.

3

The State also presented testimony of the mother of the victim of the 1999 incident, over Folk's objection. The victim's mother had visited a laundromat with her six-year-old son, four-year-old son, and baby. Her boys went back to an arcade game in the laundromat, and she started loading clothes into a washing machine. She then saw Folk "running to get some quarters," and assumed that Folk was obtaining quarters for his washing machine. After she put the clothing into the washing machine, the mother looked at where her boys were and "saw Mr. Folk snatching his hand out of [the four-year-old boy's] pants." The mother called her boys over to her, and her four-year-old son told her, "Mama, that man was feeling on my peepee." During the testimony at the 2012 trial, the prosecutor admitted into evidence and then published to the jury a photograph of the four-year-old boy taken around the time of the lewd conduct. Additionally, the prosecutor admitted into evidence a certified copy of the judgment of conviction against Folk that arose out of the 1999 incident.

Folk presented testimony from witnesses in his defense, and the State called rebuttal witnesses. The jury found Folk guilty of lewd conduct with a minor child under sixteen. The district court sentenced Folk to a determinate life sentence, and Folk appeals.

## II.

## ANALYSIS

Folk argues that the district court erred by admitting the child's statements about his nightmare under the excited utterance exception. Folk also maintains that the district court improperly admitted evidence of his prior convictions. Finally, if we determine that more than one error was committed below, but we nonetheless determine that each individual error is harmless, Folk contends that the cumulative error doctrine applies.

### A.    The Child's Statements

Folk argues that the mother's testimony repeating the child's statements was hearsay and that the district court erred by admitting it under the excited utterance exception. Specifically, Folk contends that *State v. Field*, 144 Idaho 559, 568, 165 P.3d 273, 282 (2007), is controlling and asserts that the child's statements were the result of a reflective thought and thus were not admissible under Idaho Rule of Evidence 803(2). In addition, Folk challenges the relevancy of the child's statements, arguing that the statements about the content of the child's dream are not probative of whether the events in the dream actually happened. The State asserts that the district court properly admitted the child's statements as an excited utterance. As for Folk's

4

relevancy challenge, the State posits that Folk did not preserve the issue for appeal. In reply, Folk claims that he challenged the relevancy of the statements in his motion to exclude the hearsay statements.

## 1.    Relevancy

We initially address the challenge to the relevancy of the statements. Evidence that is relevant to a material and disputed issue concerning the crime charged is generally admissible. *State v. Stevens*, 146 Idaho 139, 143, 191 P.3d 217, 221 (2008). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401. Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010). We review questions of relevance de novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993).

Contrary to the State's claim, Folk did raise the issue of relevancy below. Folk, in his pro se motion, moved the court "to exclude the testimony of why [the mother] called the police, in order to prevent erroneous admission of irrelevant testimony." Folk specifically identified one of the statements that he was concerned about: "the child declarant, telling his mother that he had a nightmare." Folk argued that the statements were "not going to be helpful to the jury in deciding what is the guilt or innocence of the defendant." In fact, the testimony of the mother was that the child told her that the nightmare "was about what that bad guy did to him *the night before*." (Emphasis added.) The reference in the statements about an actual occurrence the night before is determinative of the relevancy question. The statements *are* probative of the charge against Folk because the statements make it more likely that the charge against Folk is true. Thus, the child's statements are relevant.

## 2.    Excited utterance

Folk contends the district court erred by admitting the child's statements under the excited utterance exception to the general rule excluding hearsay. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." I.R.E. 801(c); *State v. Gomez*, 126 Idaho 700, 704, 889 P.2d 729, 733 (Ct. App. 1994). Hearsay is inadmissible unless otherwise provided by an exception in the Idaho Rules of Evidence or other rules of the Idaho Supreme Court.

5

I.R.E. 802. One exception exists for hearsay statements that are classified as an excited utterance under Idaho Rule of Evidence 803(2). An excited utterance requires that "(a) There must be an occurrence or event sufficiently startling to render inoperative the normal reflective thought processes of an observer; and (b) the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought." *State v. Poe*, 139 Idaho 885, 904, 88 P.3d 704, 723 (2004). In considering whether a statement constitutes an excited utterance, the totality of the circumstances must be considered, including the nature of the startling condition or event; the amount of time that elapsed between the startling event and the statement; the age and condition of the declarant; the presence or absence of self-interest; and whether the statement was volunteered or made in response to a question. *Field*, 144 Idaho at 568, 165 P.3d at 282.

Whether a statement should be admitted as an excited utterance is committed to the trial court's discretion, and that decision will not be disturbed on appeal absent an abuse of that discretion. *Id.* at 567, 165 P.3d at 281. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

Folk acknowledges that the first element of the excited utterance exception is satisfied by either the alleged sexual assault or the nightmare. Folk challenges the second element, which requires that the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought. Folk notes that the child's statements were about an event that happened in the past, made in response to questioning, and made after the child had initially refused to speak about the incident. Taken together, Folk contends that these factors show that the statements were the result of reflective thought. The State argues that the nightmare was the startling event and argues that the statements were a spontaneous reaction to the child's nightmare, not resulting from reflective thought. The district court found that the startling event was the nightmare. The district court then examined the spontaneity of the statements and considered the time between the statements and the nightmare,

6

the age of the child, and the occurrence the night before. Under the totality of the circumstances, the district court determined that the child's statements were an excited utterance.

The case relied on as "controlling" by Folk is *Field*. There, a seven-year-old girl was staying at Field's house while her mother was temporarily away. On one night, Field molested the girl. Two days later, and after the girl returned home, her sister asked the then-upset girl what was wrong. After initially not answering the question, the girl told her sister "that while at Field's house he touched her in her 'privatal [sic] area.'" *Field*, 144 Idaho at 563, 165 P.3d at 277 (alteration in original). The sister then insisted that the girl tell their mother what happened and the sister then brought the girl to the mother and told the mother that the girl had something to tell her. The girl then described what happened and the mother called police.

At trial, and over Field's objection, the sister and mother repeated what the girl had told them. On appeal, the State argued that the statements were admissible under the excited utterance exception. The Idaho Supreme Court determined that the sexual assault was a sufficiently startling event. *Id.* at 568, 165 P.3d at 282. However, it concluded that under the totality of the circumstances, the girl's statements were not admissible as an excited utterance: "Two days had passed between the incident and the statements, the statements were not volunteered and in th[at] case, [the girl]'s initial refusal to speak about the incident to her sister tend[ed] to show that when she finally did the statements were a result of reflective thought." *Id.*

In this case, the district court did not abuse its discretion when it considered the nightmare to satisfy the first requirement. As Folk acknowledges, the nightmare was an occurrence or event sufficiently startling to render inoperative the normal, reflective thought processes of the child.

The second requirement for the excited utterance exception, which requires that the statement be a spontaneous reaction to the event and not the result of reflective thought, we examine under the totality of circumstances. *State v. Thorngren*, 149 Idaho 729, 732, 240 P.3d 575, 578 (2010). This includes the nature of the startling condition or event, the amount of time that elapsed between the startling event and the statement, the age and condition of the declarant, the presence or absence of self-interest, and whether the statement was volunteered or made in response to a question. *Field*, 144 Idaho at 568, 165 P.3d at 282. As noted, the startling event was the nightmare. The record implies that the child's statements were made within a short time (likely minutes) of when he awoke from the nightmare, based upon the testimony of the

7

grandmother and mother. In addition, the child, who was five years old at the time, made the statements under the stress of the nightmare. There is no evidence of self-interest for the child to be relaying that his nightmare was about something a bad guy had done to him the night before. Finally, although the child's mother posed a question to the child, she only asked him what the nightmare was about. The mother did not pose a leading question, one that would suggest the answer in the question. As the Idaho Supreme Court recognized in *Thorngren*, a "statement in response to an open-ended question does not deprive the statement of its spontaneity." *Thorngren*, 149 Idaho at 734, 240 P.3d at 580. Here, the mother's question about what the nightmare was about, similarly, did not deprive the child's statements of their spontaneity. In sum, we cannot determine that the district court abused its discretion by admitting the statements, given that the totality of circumstances supports the determination that the statements were an excited utterance.

## B. Prior Convictions

Folk argues that the district court improperly admitted evidence of prior convictions. The district court found that the evidence of both prior convictions was admissible to prove intent and motive. The district court also determined that the 1999 incident was admissible to prove opportunity.

The evidence rule in question, Idaho Rule of Evidence 404(b), addresses the admissibility of prior bad acts:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that the prosecution in a criminal case shall file and serve notice reasonably in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

This rule prohibits introduction of evidence of acts other than the crime for which a defendant is charged if its probative value is entirely dependent upon its tendency to demonstrate the defendant's propensity to engage in such behavior. *State v. Grist*, 147 Idaho 49, 54, 205 P.3d 1185, 1190 (2009); *State v. Pokorney*, 149 Idaho 459, 463, 235 P.3d 409, 413 (Ct. App. 2010). Of course, evidence of a prior crime, wrong or act may implicate a person's character while also

being relevant and admissible for some permissible purpose, such as those listed in the rule. *See State v. Pepcorn*, 152 Idaho 678, 688-89, 273 P.3d 1271, 1281-82 (2012).

When determining the admissibility of evidence to which a Rule 404(b) objection has been made, the trial court must first determine whether there is sufficient evidence of the other acts that a reasonable jury could find the conduct actually occurred. If so, then the court must consider: (1) whether the other acts are relevant to a material disputed issue concerning the crime charged, other than propensity; and (2) whether the probative value is substantially outweighed by the danger of unfair prejudice. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *State v. Parmer*, 147 Idaho 210, 214, 207 P.3d 186, 190 (Ct. App. 2009). In this case, Folk does not challenge the existence of the prior convictions as an established fact. Therefore, we address only the relevancy and unfair prejudice issues. We exercise free review of the trial court's relevancy determination. *State v. Sheldon*, 145 Idaho 225, 229, 178 P.3d 28, 32 (2008). The trial court's balancing of the probative value of the evidence against the danger of unfair prejudice will not be disturbed unless we find an abuse of discretion. *State v. Norton*, 151 Idaho 176, 190, 254 P.3d 77, 91 (Ct. App. 2011).

On appeal, Folk argues that the probative value of the evidence of prior convictions was entirely dependent upon Folk's tendency to engage in the behavior; i.e., propensity. The State generally argues that the evidence was admissible to prove opportunity and motive; the State does not assert relevance to prove intent.[2] We address whether the prior convictions were admissible to prove motive, opportunity, and intent in turn.

### 1. Motive

The district court generally determined that the prior convictions were relevant to Folk's motive in entering the bedroom.[3] This relevancy determination is error for both prior convictions. "Motive is generally defined as that which leads or tempts the mind to indulge in a

---

[2] The State's brief contains a section entitled, "Folk's Prior Convictions Were Relevant To Folk's Motive, Intent, Or The Absence Of Mistake"; however, the only arguments raised by the State in the text of the brief relate to Folk's motive and opportunity.

[3] Although the district court labeled its analysis as applicable to motive, the district court's memorandum decision found that the prior bad acts evidence was relevant to the State's position that Folk went into the child's bedroom for the purpose of molesting the child. This pertains to Folk's intent, and not motive, as the district court likely realized when it later stated that the two convictions were relevant to Folk's "motive and/or intent in entering [the child's] bedroom."

particular act. It is distinguishable from intent, which is the purpose to use a particular means to effect a certain result." *State v. Stevens*, 93 Idaho 48, 53, 454 P.2d 945, 950 (1969) (citations omitted). "Evidence of motive is relevant when the existence of a motive is a circumstance tending to make it more probable that the person in question did the act." *State v. Russo*, ___ Idaho ___, ___, ___ P.3d ___, ___ (2014) (internal quotation marks omitted). Evidence of motive, however, is still limited by the fact that Rule 404(b) prohibits the introduction of evidence of acts other than the crime for which a defendant is charged if its probative value is entirely dependent upon its tendency to demonstrate the defendant's propensity to engage in such behavior. *Grist*, 147 Idaho at 54, 205 P.3d at 1190; *Pokorney*, 149 Idaho at 463, 235 P.3d at 413.

The Idaho Supreme Court has recently addressed the admission of prior acts evidence relevant to prove motive in *Russo*. The appeal arose from a conviction for rape, but before the rape at issue occurred, Nampa police investigated Russo for an assault and battery of a different victim. During the investigation of the assault and battery, Russo consented to a search of his computer; the search revealed that the computer contained several videos of women being violently raped, and some of the search criteria in the computer included rape fantasies. Russo stated that prior to raping a woman in Washington, resulting in a 1995 conviction, he had watched pornography that contained women being raped. He also said that he fantasized about raping a girl who would get turned on during the rape and decide she liked it; that he fantasized about being dominant over someone; and that he still struggled with issues involving aggression and sexual boundaries. At trial, the district court admitted evidence of Russo's fantasies and his collecting pornography that was consistent with those fantasies, reasoning that the evidence was relevant to his motive. *See Russo*, ___ Idaho at ___, ___ P.3d at ___. On appeal, Russo argued that motive was not relevant because "anyone who breaks into a young woman's apartment, clearly for the sole purpose of raping her, does so for the purpose of sat[isfy]ing his sexual urges" and any evidence of motive "has in no way been shown to be specific to [the victim]." *Id.* at ___, ___ P.3d at ___. The Idaho Supreme Court disagreed with both arguments:

> Defendant's arguments are wrong on both counts. As Corporal Weekes testified: "Sexual assault, contrary to the way the term sounds, is not a sexually-motivated crime. Sexual assault is a crime of violence that involves sex as a tool to commit an act that's power and control-related. It's motivated by power and control behavior. It's not motivated by sex." There is no requirement that evidence must show that the motive for committing the crime was personal to the victim. *State v. Almaraz*, 154 Idaho 584, 591-92, 301 P.3d 242, 249-50 (2013) (evidence of

10

> defendant's gang affiliation was relevant to show his motive for killing a stranger wearing a red sports jersey because it was the color used by a rival gang).

*Russo*, ___ Idaho at ___, ___ P.3d at ___. Accordingly, the Idaho Supreme Court concluded that "The district court did not err in finding that the evidence of Defendant's fantasies and his collecting pornography that was consistent with those fantasies was relevant to his motive in this case." *Id.* at ___, ___ P.3d at ___.

Unlike *Russo*, where Russo's fantasies and collections of pornography consistent with his fantasies were relevant to Russo's motive--that which leads or tempts the mind to indulge in a particular act, *Stevens*, 93 Idaho at 53, 454 P.2d at 950--the prior convictions in this case are not relevant to prove motive. Folk's prior convictions are merely propensity evidence that allow persons to infer that if Folk committed the prior offenses, he must have committed the offense at issue. Thus, the prior convictions are inadmissible because their probative value is entirely dependent upon their tendency to demonstrate the defendant's propensity to engage in such behavior. *Grist*, 147 Idaho at 54, 205 P.3d at 1190; *Pokorney*, 149 Idaho at 463, 235 P.3d at 413.

## 2. Opportunity

The district court found that evidence of the 1999 incident "tends to corroborate the State's contention that Folk had the opportunity to molest [the child], even if he was alone with the child for a very short time." This relevancy determination is in error. According to McCormick, prior bad acts are admissible "[t]o establish opportunity in the sense of access to or presence at the scene of the crime or in the sense of possessing distinctive or unusual skills or abilities employed in the commission of the crime charged." 1 KENNETH S. BROUN, MCCORMICK ON EVIDENCE § 190 (6th ed. 2006) (footnotes omitted). Idaho case law is consistent with this understanding, as demonstrated by *State v. Gomez*, 151 Idaho 146, 254 P.3d 47 (Ct. App. 2011). In that case, a majority of this Court concluded that evidence of prior bad acts done to other members in the victim's home was admissible against the defendant to show opportunity and credibility. *Id.* at 155, 256 P.3d at 56. In addition to the appellate counsel's concession that opportunity was at issue, the majority reasoned that the evidence was relevant because of the defendant's access to the scene and the distinctive skill possessed by the defendant: "the relevance of [the evidence] was not only Gomez's ability to access the room, but also his ability, in a house full of people, to surreptitiously enter V.B.'s bedroom, while she was sleeping next to her brother, to touch her and offer her money to sleep with him." *Id.* According

11

to the majority, "This testimony was necessary to explain how and why Gomez was able to abuse V.B. without anyone seeing the abuse, as her testimony, if considered alone, raised substantial questions as to how such abuse was possible in a house with little privacy." *Id.*

Nonetheless, evidence of other acts must be relevant to a material disputed issue concerning the crime charged, other than propensity. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *Parmer*, 147 Idaho at 214, 207 P.3d at 190. Unlike *Gomez*, where the majority noted that the victim's testimony "raised substantial questions as to how such abuse was possible," the testimony at trial in this case did not raise a substantial question of how such abuse was possible during the time Folk was in the child's room. Here, the mother's testimony revealed that she had left the living room with Folk and the child in the living room, and that after being in the kitchen for ten to fifteen minutes, she returned to the living room. After not seeing the child, she asked her husband where the child was and then proceeded to the child's bedroom. Upon entering the child's bedroom, the mother saw the child lying on his back on the bed with his legs opened and saw Folk kneeling between the child's legs with Folk's hand on the child's hips. The child's testimony was that he and Folk were playing with blocks before going to the child's bedroom. The child continued by recounting that Folk, while on the floor on his knees, pulled down the child's pants and sucked on the child's penis. Therefore, there was not a substantial question as to how Folk had access to the bedroom or the ability to make contact with the child. In short, opportunity was not a materially disputed issue. Accordingly, the prior conviction from the 1999 incident was not relevant to prove opportunity. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *Parmer*, 147 Idaho at 214, 207 P.3d at 190.

### 3.    Intent

The district court found that the evidence was relevant to prove intent because the prior bad acts evidence "infers that Folk did not intend innocent contact with [the child] when he entered [the child's] bedroom alone with the child." This relevancy determination is also in error. Evidence of prior bad acts may be relevant to prove the intent element of the charged offense. *E.g.*, *State v. Williams*, 134 Idaho 590, 592, 6 P.3d 840, 842 (Ct. App. 2000). Nonetheless, evidence of other acts must be relevant to a material disputed issue concerning the crime charged, other than propensity. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *Parmer*, 147 Idaho at 214, 207 P.3d at 190.

12

In this case, the charged offense, lewd conduct with a minor child under sixteen, requires that the act at issue be "done with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person, such minor child, or third party." Idaho Code § 18-1508. Therefore, the district court's analysis of the intent element was flawed when it considered Folk's intent in entering the room. The relevant intent element to consider was whether Folk had touched the child's penis with the intent to arouse, appeal to or gratify the lust, passions, or sexual desires of Folk, the child or a third party, without relying on the propensity aspect. Here, intent is inherently shown by proof of the act. The State's evidence of the act, if believed by the jury, left no plausible issue as to Folk's intent. That is, the alleged act could not possibly have been committed with innocent intent. *See State v. Roach*, 109 Idaho 973, 975, 712 P.2d 674, 676 (Ct. App. 1985); *see also State v. Cook*, 144 Idaho 784, 789, 171 P.3d 1282, 1287 (Ct. App. 2007) (holding that other misconduct evidence was not relevant where "there was no potentially viable defense that Cook committed the [charged] acts accidentally or without intent."). Moreover, Folk did not argue that he touched the child's penis accidentally or in any other way that would not have satisfied the intent requirement. Therefore, intent was not a materially disputed issue, and the district court erred by finding the prior convictions relevant to prove intent. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *Parmer*, 147 Idaho at 214, 207 P.3d at 190.

### 4. Harmless and cumulative error

Because evidence of the 1992 incident was not admissible to prove motive or intent, and because evidence of the 1999 incident was not admissible to prove motive, opportunity or intent, we need not consider whether the probative value of the prior convictions is substantially outweighed by the danger of unfair prejudice. *State v. Joy*, 155 Idaho 1, 11, 304 P.3d 276, 286 (2013). We must now consider whether the district court's errors, admitting evidence of the prior incidents and the accompanying convictions, were harmless. *Id.* This Court applies the harmless error test articulated by the United States Supreme Court in *Chapman v. California*, 386 U.S. 18 (1967). *State v. Perry*, 150 Idaho 209, 222, 245 P.3d 961, 974 (2010). Under the two-part *Chapman* test, the defendant must establish the existence of an error, "at which point the State shall have the burden of demonstrating that the error is harmless beyond a reasonable doubt." *Perry*, 150 Idaho at 222, 245 P.3d at 974. To meet that burden, the State must "prove[] 'beyond a reasonable doubt that the error complained of did not contribute to the verdict

obtained.'"  *Id*. at 221, 245 P.3d at 973 (quoting *Chapman*, 386 U.S. at 24).   Interpreting *Chapman*, the United States Supreme Court has explained that:

> To say that an error did not "contribute" to the ensuing verdict is not, of course, to say that the jury was totally unaware of that feature of the trial later held to have been erroneous. . . .
>
>     To say that an error did not contribute to the verdict is, rather, to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.

*Yates v. Evatt*, 500 U.S. 391, 403 (1991), *overruled in part on other grounds by Estelle v. McGuire*, 502 U.S. 62, 72 n.4 (1991).  Thus, an appellate court's inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993).[4]

For the evidence relating to the 1992 incident, we are persuaded that the district court's error was not harmless.  The 1992 incident was strong propensity evidence in this trial because it involved the same type of alleged conduct--Folk placing his mouth on the child's penis--as happened to the victim in the 1992 incident.  Similarly, we are not persuaded that the district court's error in admitting evidence of the 1999 incident was harmless.  The evidence of the 1999 incident, unlike the 1992 incident or the alleged incident in this case, was corroborated by the victim's mother who witnessed Folk pulling his hand out of her son's pants.  Evidence of each incident was, therefore, strong propensity evidence as compared to the testimony presented during the trial at issue.  Here, the mother testified at trial that she did not see Folk with his mouth on the boy's penis; indeed, she testified that when she walked in, the child's pants were not pulled down.  The only direct evidence of Folk touching the child's penis came from the child.  But on cross-examination, Folk impeached the child with statements the child had made during an interview with a detective; during the preliminary hearing; during the first trial; and during an interview with a licensed social worker at a center approximately six months before the 2012 trial.  For example, the child had previously stated that his mother was in the room when Folk put his mouth on the child's penis.  On a different occasion, the child asserted that he

---

[4]     We need not decide in this case whether the harmless error analysis focuses on the jury actually sitting in a defendant's case or if it focuses on a rational jury.  In this case, we are not persuaded that the outcome of the harmless error analysis using a rational jury or using this jury would have been different.

had urinated in Folk's mouth, that Folk went outside and vomited, and that he and the mother had gone outside to witness Folk vomit. Both of these examples contradicted the mother's testimony. Folk's cross-examination effectively called into question the credibility of the statements made by the child, contrary to the State's argument that "Folk's cross-examination of [the child] demonstrated that his memory had waned . . . ." For this reason, we are not persuaded beyond a reasonable doubt that the verdict would be the same if the jury did not have evidence of the 1992 incident, which involved the same type of alleged conduct. Also, we are not persuaded beyond a reasonable doubt that the verdict would be the same if the jury did not have evidence of the 1999 incident.

## III.
## CONCLUSION

We conclude that the mother's hearsay testimony about the child's statements was relevant and that the child's statements were an excited utterance. Accordingly, the district court did not abuse its discretion by admitting the child's statements. However, we conclude that the district court erred by admitting evidence of the two prior convictions; the conviction related to the 1992 incident was not relevant to prove motive or intent, and the conviction related to the 1999 incident was not relevant to prove motive, opportunity, or intent. Further, the admission of evidence relating to each incident was not harmless because of the strong propensity value of the evidence as compared to the testimony presented during the trial at issue. Accordingly, we vacate Folk's judgment of conviction and remand for proceedings consistent with this opinion.

Judge LANSING, **CONCURS**.

Judge GRATTON, **CONCURS** as to Part II A, **CONCURS IN THE RESULT** as to Part II B.

15