IN THE COURT OF APPEALS OF THE STATE OF IDAHO

Docket No. 40916

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2015 Opinion No. 68 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: October 21, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| ROBERT DEAN HALL, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael R. McLaughlin, District Judge.

Judgment of conviction for murder in the second degree and use of a deadly weapon during the commission of a crime, affirmed.

Sara B. Thomas, State Appellate Public Defender; Jason C. Pintler and Ben P. McGreevy, Deputy Appellate Public Defenders, Boise, for appellant. Jason C. Pintler argued.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Robert Dean Hall appeals from his judgment of conviction for second degree murder and use of a firearm during the commission of the murder. Specifically, Hall argues that the district court erred in failing to properly instruct the jury on his justifiable homicide defense. He further contends that the district erred in excluding Facebook statements and by admitting testimony about the curriculum of Hall's concealed weapons class. For the reasons set forth below, we affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Following a confrontation in the parking lot of Walgreens, the defendant, Robert Dean Hall, shot E.C. in the head and the chest, killing him. Hall's wife, K.H., was employed by E.C.'s law firm and was engaged in a sexual relationship with E.C. K.H. testified that Hall was not

1

aware of her relationship with E.C. prior to the shooting, but several witnesses testified that Hall was suspicious of the relationship and that he had confronted both K.H. and E.C about the nature of their relationship prior to the shooting. In the weeks leading up to the shooting, Hall and E.C. were involved in at least two heated conversations, one at E.C.'s office after Hall observed K.H. and E.C. returning from lunch together and one at the Hall residence that occurred after Hall read text messages sent by E.C. to K.H. These interactions did not include any physical violence from either E.C. or Hall. E.C.'s wife and co-workers testified that in the weeks prior to his death, E.C. was more aggressive and quarrelsome than usual. K.H. testified that E.C. was pressuring her to divorce Hall and was becoming more demanding of her time and attention outside of work.

On the evening of the shooting, during the course of an argument about their relationship, K.H. told Hall that she was having an affair, but that her relationship was with an attorney in Oregon. Following the argument, K.H. left her home and drove to Walgreens, telling Hall she needed to pick up a prescription. K.H. met E.C. in Walgreens' parking lot and they left together in his vehicle. K.H. and E.C. purchased gas at a nearby Fred Meyer, drove around looking at houses, and then had intercourse in E.C.'s vehicle before returning to Walgreens' parking lot. During the time that E.C. and K.H. were together, K.H. received a telephone call from Hall who inquired as to K.H.'s location and whether she was with E.C. While K.H. was on the telephone with Hall, E.C. grabbed the phone and spoke to Hall telling him, "Yeah, f---ing crack your head," and "Yeah, just wait there. We'll be there in a minute." When E.C. and K.H. returned to the parking lot, Hall was waiting for them and confronted the couple.

K.H. was the only witness to the confrontation between Hall and E.C., and the record is unclear as to exactly what happened prior to the shooting. K.H. testified that E.C. and Hall argued, and that E.C. may have insulted Hall about his income and physical characteristics. In response, Hall insulted E.C. for having an affair while he had a wife and five children, including a young baby, at home. The evidence, although contradictory, reflects that K.H. testified she saw E.C. push Hall, she walked away from the argument, heard "scuffling," but did not turn around again until after she heard gun shots. E.C. was shot in the chest and the head and died almost instantly. Hall was transported to the hospital for a head wound that was attributed to a bullet grazing his scalp.

2

On the night of the shooting, Hall told responding officers that he had carried the gun[1] to the scene in the front pocket of his sweatshirt and that the gun fell out during the fight, that Hall and E.C. fought over the gun, and that Hall believed he had been shot in the neck or the head but did not explain how E.C. was shot. When Hall was later questioned, he was not able to clearly explain the events that led to the death of E.C. During the trial, Hall admitted expert testimony that he suffered amnesia as a result of the concussive impact of the injury caused by the gunshot.

Hall was charged with first degree murder and use of a deadly weapon during the commission of a crime. After a jury trial, he was convicted of second degree murder and use of a firearm in the commission of that offense. He was sentenced to a unified sentence of thirty years, with a determinate sentence of seventeen years. Hall appeals, challenging the district court's jury instructions, a pretrial evidentiary ruling excluding social media evidence, and an evidentiary ruling allowing testimony regarding a concealed weapons course he had taken.

## II.

## ANALYSIS

### A.    Justifiable Homicide and Self-Defense Jury Instructions

Hall raises two issues on appeal regarding jury instructions for his justifiable homicide and self-defense claims. First, we are asked to determine whether the district court erred in denying Hall's request to instruct the jury with a justifiable homicide instruction consistent with Idaho Criminal Jury Instruction 1514. Second, we address Hall's claim that the district court erred by instructing the jury with the pattern self-defense instructions, consistent with Idaho Criminal Jury Instructions 1517, 1518, and 1519. The State asserts that Hall failed to preserve these issues for appeal.

Whether the jury has been properly instructed by the trial court is a question of law over which this Court exercises free review. *State v. Southwick*, 158 Idaho 173, 181, 345 P.3d 232, 240 (Ct. App. 2014). This Court must review the instructions as a whole and determine if the instructions fairly and accurately reflect the applicable law. *Id.* In a criminal case, a defendant is entitled to have the jury properly instructed on his theory of the case. *State v. Arrasmith*, 132 Idaho 33, 43, 966 P.2d 33, 43 (Ct. App. 1998). Idaho Code § 19-2132(a) requires that the

---

[1]    The gun used in the shooting was purchased by K.H. as a gift for Hall during their marriage, and the record shows that Hall obtained a concealed weapons permit in 2006 and was known to regularly carry the handgun.

3

trial court must provide to the jury being charged "all matters of law necessary for their information" and must give a requested jury instruction if it determines that instruction to be correct and pertinent. Under a four-part test, a requested instruction must be given where: (1) it properly states the governing law; (2) a reasonable view of the evidence would support the defendant's legal theory; (3) it is not addressed adequately by other jury instructions; and (4) it does not constitute an impermissible comment as to the evidence. *State v. Fetterly*, 126 Idaho 475, 476-77, 886 P.2d 780, 781-82 (Ct. App. 1994); *see also State v. Evans*, 119 Idaho 383, 385, 807 P.2d 62, 64 (Ct. App. 1991). To meet the second prong of this test, the defendant must present at least some evidence supporting his or her theory and any support will suffice as long as his or her theory comports with a reasonable view of the evidence. *State v. Kodesh*, 122 Idaho 756, 758, 838 P.2d 885, 887 (Ct. App. 1992). In other words, a defendant must present facts to support each element of a prima facie case for each defense. *State v. Camp*, 134 Idaho 662, 665-66, 8 P.3d 657, 660-61 (Ct. App. 2000). If the defendant fails to provide evidence supporting any one of the necessary elements of a defense, the defendant has failed to meet his or her burden and is not entitled to have the jury instructed on that defense. A trial court's decision not to instruct the jury in accordance with the defendant's proposed instructions will be upheld when the proposed instruction is: (1) erroneous in its statement of the law; (2) not supported by the evidence or constitutes an impermissible comment on the evidence; or (3) adequately covered by other instructions given by the court. *Arrasmith*, 132 Idaho at 43, 966 P.2d at 43.

Further, the pattern Idaho Criminal Jury Instructions are presumptively correct statements of law, and trial courts are expected to use them unless another instruction would more adequately, accurately, or clearly state the applicable law. *State v. Reid*, 151 Idaho 80, 85, 253 P.3d 754, 759 (Ct. App. 2011). Both ICJI 1514 and 1517, at issue here, were approved by the Idaho Supreme Court and both reference Idaho Code §§ 18-4009, 18-4010, and 18-4013 in the comments sections of the instruction. The district court's jury instructions will be upheld unless it is determined that another instruction would have been more applicable to the charges and evidence before the jury.

### 1. Hall sufficiently preserved his objection to the jury instructions

The State argues that Hall failed to preserve this issue for appeal because he did not object to the final jury instructions when the district court ruled that it would not include the justifiable homicide instruction, ICJI 1514, and would only give the pattern self-defense

4

instructions. It further alleges that Hall's argument on appeal regarding I.C. § 18-4009(1) and ICJI 1514, discussed below, is not the argument Hall made before the district court and thus, the issue is not preserved for appeal.

Idaho Criminal Rule 30(b) provides that "no party may assign as error the giving of or failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the instruction to which the party objects and the grounds of the objection." It has been held, however, that unless a defendant causes or plays a role in a trial court's decision to give (or not give) a specific instruction, then the defendant does not invite error and may appeal instructions given. *See State v. Adamcik*, 152 Idaho 445, 476, 272 P.3d 417, 448 (2012); *State v. Blake*, 133 Idaho 237, 240, 985 P.2d 117, 120 (1999). "[R]equiring a contemporaneous objection prevents the litigant from sandbagging the court, i.e., 'remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor.'" *State v. Longest*, 149 Idaho 782, 784, 241 P.3d 955, 957 (2010) (quoting *Puckett v. United States*, 556 U.S. 129, 134 (2009)).

Prior to trial, Hall filed proposed jury instructions that included a modified version of ICJI 1514, justifiable homicide defense, along with ICJI 1516, excusable homicide defense. At the first jury instruction conference, the court provided a proposed set of instructions that included the ICJI self-defense instructions but Hall objected that the court failed to include the requested justifiable homicide and excusable homicide instructions. At the second jury instruction conference, the court's proposed jury instructions included the justifiable homicide instruction[2] and the self-defense instructions, and the parties argued the use of the justifiable homicide instruction, in addition to, or as a replacement of, the self-defense instructions proposed. At the final jury instruction conference, the court informed the parties, on the record, that it had withdrawn the justifiable homicide instruction because the court determined that the self-defense instructions adequately covered the justifiable homicide defense and because the justifiable homicide instruction was repetitive and likely to be confusing to the jury. Neither party objected to the final set of jury instructions.

---

[2] The record does not include a copy of the court's proposed instructions from this hearing but the transcript shows that the parties discussed the justifiable homicide, excusable homicide, and self-defense instructions with the court.

5

Hall has adequately preserved this issue for appeal. *See State v. Pearce*, 146 Idaho 241, 248, 192 P.3d 1065, 1072 (2008). He raised his objection several times thereby avoiding any "sandbagging" or surprise to the State. When the district court did not include the justifiable homicide instruction in the first set of proposed instructions, Hall objected. When the court included the instruction in the proposed final set of instructions, it required Hall to argue and justify why that instruction should be included instead of the self-defense instruction. It is undisputed that Hall agreed that the self-defense instruction was appropriate, but the record also shows that counsel's concession was grounded in the argument that both the justifiable homicide instruction and the self-defense instruction adequately covered the issue. At all times prior to the final jury instruction conference, Hall advocated for the inclusion of the justifiable homicide instruction. Because Hall offered the instruction and objected to the failure to include it, albeit before the final instruction conference, the issue is preserved for appellate review.

2. **Hall's justifiable homicide instruction was not supported by a reasonable view of the evidence**

On appeal, Hall argues that the district court erred in failing to provide ICJI 1514[3] to the jury after he requested a modified version of ICJI 1514 be submitted to the jury. Specifically,

_____

[3]    Idaho Criminal Jury Instruction 1514 states:

> The defendant contends as a defense in this case that the killing was justifiable because the defendant was [description of justification; *e.g.* an excusable homicide such as attempting to stop the commission of a robbery].
> Under the law, homicide is justifiable if
> [committed while resisting an attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person.]
> [committed in defense of habitation, property or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony, or against one who manifestly intends and endeavors, in a violent, riotous or tumultuous manner, to enter the habitation of another for the purpose of offering violence to any person therein. However, the bare fear of such acts is not sufficient unless the circumstances are sufficient to create such a fear in a reasonable person and the defendant acted under the influence of such fears alone.]
> [committed in the lawful defense of the defendant, or of a wife or husband, parent, child, master, mistress or servant of the defendant, when there is reasonable grounds to apprehend a design to commit a felony or to do some great bodily injury and imminent danger of such design being accomplished; but such person, or the person on whose behalf the defense was made, if that person was the assailant or engaged in mortal combat, must really and in good faith have endeavored to decline any further struggle before the homicide was committed.

Hall focuses his argument on the district court's decision not to instruct the jury on the first portion of ICJI 1514 that corresponds to Idaho Code § 18-4009(1). Hall argues that the plain language of I.C. § 18-4009(1) applies when a homicide is committed during an actual, ongoing attack of violence or great bodily injury which is consistent with the evidence in this case.

It has long been held that Idaho Code § 18-4009 is the relevant law for self-defense in a homicide case. *State v. Rodriguez*, 93 Idaho 286, 291, 460 P.2d 711, 716 (1969). Idaho Code § 18-4009(1) provides that a homicide is justifiable if it is committed "when resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person." Hall's proposed modified ICJI 1514 requested that the jury be instructed that the homicide in this case would be justifiable if "[t]he homicide was committed while resisting an attempt to do great bodily injury upon any person, including the defendant." Hall argues this code section and the relevant pattern jury instruction should have been given because he killed E.C. while resisting an actual, ongoing attack intended to cause great bodily injury to Hall.

Hall asks this Court to infer from the evidence that E.C. was the initial aggressor and was actively committing great bodily injury on Hall at the time of the shooting. Hall relies primarily on three pieces of evidence: (1) testimony that prior to the shooting he was sad but not angry after his fight with K.H.; (2) the comments E.C. made during the telephone call immediately prior to the shooting; and (3) K.H.'s testimony that she saw E.C. push Hall just before the scuffle ensued and she walked away. However, there is also evidence that Hall brought the gun to the parking lot, carried it unholstered in the front pocket of his sweatshirt, and argued with E.C. in the parking lot.

Hall's argument that I.C. § 18-4009(1) applies relies, in part, on the alleged threat made by E.C. over the phone minutes before the confrontation. However, this does not establish there

---

However, the bare fear of such acts is not sufficient unless the circumstances are sufficient to create such a fear in a reasonable person and the defendant acted under the influence of such fears alone.]

[when necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed, or in lawfully suppressing any riot, or in lawfully keeping and preserving the peace.]

The burden is on the prosecution to prove beyond a reasonable doubt that the homicide was not justifiable. If there is a reasonable doubt whether the homicide was justifiable, you must find the defendant not guilty.

7

was an actual, ongoing attack, but only that there may have been the threat of a future attack. In addition, despite this telephonic threat, Hall waited at Walgreens for K.H. and E.C. to return in order to confront them about their activities.

The only witness at the scene, K.H., had various versions of the events. When K.H. was interviewed immediately after the shooting, she stated that E.C. and Hall were arguing, K.H. turned to walk away and she then heard two shots followed by a single shot. After Hall had been arrested, K.H. immediately reconciled with Hall and during various recorded telephone calls, K.H. mentioned she was going to "vindicate" Hall. Thereafter, K.H.'s statement changed. She then testified that E.C. and Hall argued, E.C. pushed Hall, and K.H. turned and walked away. She testified she heard one shot, followed by two shots. Nonetheless, under any of the scenarios proffered by K.H. or Hall, there is no evidence that there was an actual, ongoing attack that was likely to result in the death of or great bodily harm to Hall at the time Hall fired the gun, killing E.C. Even if there was a push or a struggle, without any further evidence, we cannot find there was evidence of an actual, ongoing attack sufficient to justify the use of deadly force.

We cannot conclude that a reasonable view of the evidence before the district court and the jury rose to a showing that there was an actual, ongoing attack by E.C. and that great bodily injury was being committed against Hall at the time he shot E.C. Thus, Hall was not entitled to an instruction pursuant to I.C. § 18-4009(1) as opposed to the instruction given by the court because the proposed justifiable homicide instruction was not supported by the evidence and, as discussed below, was adequately covered by other instructions given by the court.

### 3. The self-defense instruction adequately covered justifiable homicide

The second jury instruction issue on appeal is Hall's argument that the district court erred in instructing the jury with ICJI 1517,[4] 1518, and 1519 (the self-defense instructions).[5] Hall

---

[4]     ICJI 1517 states as modified for homicide:

A homicide is justifiable if the defendant was acting in [self-defense] [defense of another].

In order to find that the defendant acted in [self-defense] [defense of another], all of the following conditions must be found to have been in existence at the time of the [killing] [striking]:

1. The defendant must have believed that [the defendant] [another person] was in imminent danger of [death or great bodily harm] [bodily harm].

2. In addition to that belief, the defendant must have believed that the action the defendant took was necessary to save [the defendant] [another person] from the danger presented.

8

argues that ICJI 1517 was not the proper statement of self-defense law applicable to the facts of this case because this instruction requires the jury to engage in a different analysis of the facts than it would if it was applying I.C. § 18-4009(1).

The Idaho Supreme Court has approved ICJI 1517 for use in cases where the defendant claims the homicide was justifiable under a self-defense theory and is therefore considered to be presumptively correct if it is applicable and can be accurately applied to the facts of this case. *See* ICJI 1517. *See also State v. Reid*, 151 Idaho 80, 85, 253 P.3d 754, 759 (Ct. App. 2011) (citing *State v. Ruel*, 141 Idaho 600, 602, 114 P.3d 158, 160 (Ct. App. 2005)) ("The pattern ICJI instructions are presumptively correct. The Idaho Supreme Court approved the pattern jury instructions and has recommended that the trial courts use the instructions unless a different instruction would more adequately, accurately, or clearly state the law.").

ICJI 1517 requires that the following conditions must be met in order for a homicide to be considered justifiable:

> (1)    the defendant believed he was in imminent danger of death or great bodily harm;

---

3. The circumstances must have been such that a reasonable person, under similar circumstances, would have believed that [the defendant] [another person] was in imminent danger of [death or great bodily injury] [bodily injury] and believed that the action taken was necessary.

4. The defendant must have acted only in response to that danger and not for some other motivation.

[5. When there is no longer any reasonable appearance of danger, the right of (self-defense) (defense of another) ends.]

In deciding upon the reasonableness of the defendant's beliefs, you should determine what an ordinary and reasonable person might have concluded from all the facts and circumstances which the evidence shows existed at that time, and not with the benefit of hindsight.

The danger must have been present and imminent, or must have so appeared to a reasonable person under the circumstances. A bare fear of [death or great bodily injury] [bodily injury] is not sufficient to justify a homicide. The defendant must have acted under the influence of fears that only a reasonable person would have had in a similar position.

The burden is on the prosecution to prove beyond a reasonable doubt that the homicide was not justifiable. If there is a reasonable doubt whether the homicide was justifiable, you must find the defendant not guilty.

[5]    These were given as the court's Jury Instruction Nos. 33, 34, and 35.

(2)     the defendant also believed that the action he took was necessary to save himself from the danger presented;

(3)     that the circumstances were such that a reasonable person, under those circumstances would have believed that he was in imminent danger of death or great bodily harm, and thus that action was necessary; and

(4)     that the defendant acted in response to the danger and not for some other motivation.

This jury instruction is an accurate statement of the law and adequately addresses the facts of the case. We have determined that the evidence presented to the jury did not support Hall's claim that he was the victim of an actual, ongoing attack by E.C. However, it is clear from the evidence that there was a confrontation between E.C. and Hall and thus, pursuant to ICJI 1517, in order to find the homicide justifiable, the jury was required to find that Hall perceived the threat of violence from E.C. and formed a belief that danger was imminent, prior to responding with any kind of self-defense. We cannot conclude that the district court erred in its decision to instruct the jury with the ICJI self-defense instructions given the evidence presented to the jury about the nature of the confrontation.

We do not find merit in Hall's argument that ICJI 1517 and 1518 violate Hall's constitutional right to due process. First, while ICJI 1517 has been approved for both justifiable homicide and self-defense against battery, the court is required to properly modify the instruction so it is consistent with the facts of the case. *See* comments, ICJI 1517. For example, the first element of ICJI 1517 must be modified to reflect that the defendant was in imminent danger of death or great bodily harm in order to justify a homicide committed in self-defense. In addition, the instruction clearly places the burden on the State to prove beyond a reasonable doubt that the homicide was not justifiable.

Second, ICJI 1518 is consistent with Idaho law, even for justifiable homicides committed under I.C. § 18-4009(1). The laws of this state require a defendant to act with a reasonable belief that self-defense is necessary because he is in danger of great bodily harm, even under an ongoing threat of violence. *See State v. Grover*, 35 Idaho 589, 598, 207 P. 1080, 1083 (1922); *State v. Wilson*, 41 Idaho 616, 635, 243 P. 359, 364 (1925). This jury instruction does not lower the State's burden of proof and does not impose additional requirements on a defendant claiming self-defense.

In this case, the record shows that the district court carefully considered all the jury instructions presented by the parties applicable to justifiable homicide and self-defense, and

10

ultimately determined that ICJI 1517, 1518, and 1519 were the proper instructions for this case. Those instructions are approved pattern instructions and are accurate statements of law applicable to the facts of the case as presented to the jury. Therefore, we hold that the district court properly instructed the jury on Hall's theory of self-defense by utilizing ICJI 1517 and the related self-defense instructions, and that the instructions provided to the jury were consistent with the evidence admitted at trial.

## B. The District Court Correctly Excluded Evidence of the Facebook Statements

Hall challenges the district court's pretrial order excluding Facebook statement evidence. On appeal, Hall argues that the district court erred in denying Hall's motion to admit postings from E.C.'s Facebook account that tended to support Hall's self-defense claim and to show E.C.'s reputation for being violent, aggressive, and quarrelsome.

In a pretrial motion, Hall sought to admit numerous items of evidence, including Facebook statements, pursuant to Idaho Rules of Evidence 404(a)(2), 404(b), 405(b), and 406.[6] Hall argued that the Facebook posts were relevant because the statements showed E.C.'s "state of mind," and the evidence supported Hall's theory of defense that E.C. was the first aggressor and the shooting was done in self-defense. Generally, the Facebook posts included statements by E.C. that he would like to fight in order to protect someone that he cared about.

The parties submitted this issue to the district court on the briefs, without oral argument, and the only evidence or other support for their arguments was copies of the actual Facebook posts. Based on the stipulation of parties, the district court issued a decision without oral argument and determined that the Facebook statements did not specifically identify another person and that it was speculative to assume the statements were referring to the defendant. The district court's order excluded the Facebook evidence from use at trial because it was both inadmissible hearsay evidence and irrelevant pursuant to I.R.E. 403.

Evidence that is relevant to a material and disputed issue concerning the crime charged is generally admissible. *State v. Stevens*, 146 Idaho 139, 143, 191 P.3d 217, 221 (2008). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401; *Stevens*, 146 Idaho at 143, 191 P.3d at 221. Whether a fact is of consequence or

---

[6]     Hall's motion did not initially address I.R.E. 803(3) but the parties' subsequent briefing on this issue was limited to I.R.E. 403 and 803(3).

material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010). Testimony that amounts to speculation or conjecture is not relevant and therefore not admissible. *State v. Marks*, 156 Idaho 559, 563, 328 P.3d 539, 543 (Ct. App. 2014). We review questions of relevance de novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993); *State v. Aguilar*, 154 Idaho 201, 203, 296 P.3d 407, 409 (Ct. App. 2012). The trial court's balancing of the probative value of the evidence against the danger of unfair prejudice will not be disturbed absent a showing that the trial court abused its discretion. *State v. Folk*, 157 Idaho 869, 876-77, 341 P.3d 586, 593-94 (Ct. App. 2014).

Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. I.R.E. 801(c); *State v. Gomez*, 126 Idaho 700, 704, 889 P.2d 729, 733 (Ct. App. 1994). Hearsay is inadmissible unless otherwise provided by an exception in the Idaho Rules of Evidence or other rules of the Idaho Supreme Court. I.R.E. 802. The hearsay exception applicable in this case is the "Then Existing Mental, Emotional, or Physical Condition" exception under I.R.E. 803(3), which provides that statements of "the declarant's then existing state of mind, emotion, sensation, or physical condition" are not excluded by the hearsay rule.

Whether a statement should be admitted as a "state of mind" hearsay exception is committed to the trial court's discretion, and that decision will not be disturbed on appeal absent an abuse of that discretion. *Folk*, 157 Idaho at 875, 341 P.3d at 592. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *Id*.

Limited circumstances exist in which statements made by a murder victim to a third party are admissible under I.R.E. 803(3)'s state of mind exception to the hearsay rule. *State v. Shackelford*, 150 Idaho 355, 364, 247 P.3d 582, 591 (2010). Statements of the declarant-victim's state of mind may be admitted "only after a determination that (1) the declaration is relevant, and (2) the need for and value of such testimony outweighs the possibility of prejudice to the defendant." *Id*. (citing *State v. Garcia*, 102 Idaho 378, 382, 630 P.2d 665, 669 (1981)). The

12

Court has recognized "four well-defined categories in which a declarant-victim's state of mind is relevant because of its relationship to the legal theories presented by the parties." *Id.* This rule applies when the defendant: (1) claims self-defense as justification for the killing; (2) seeks to build his defense around the fact that the deceased committed suicide evidence introduced which tends to demonstrate that the victim made statements inconsistent with a design to take his or her own life is relevant; (3) claims the killing was accidental; and (4) when a specific "mens rea" is in issue. *Id.* (citing *State v. Goodrich*, 97 Idaho 472, 477 n.7, 546 P.2d 1180, 1187 n.7 (1976)). Hall relies on the first category and argues that the Facebook statements support his claim of self-defense because the statements tended to show the emotional and mental condition of E.C. prior to the shooting.

Here, the district court correctly perceived this decision as discretionary and we conclude that the district court properly exercised its discretion. The motion at issue was a pretrial motion, made at a time when the district court did not have the benefit of the evidence and testimony admitted at trial. Support for Hall's argument on appeal, on the other hand, relies on the evidence and testimony adduced at trial but such evidence was not available to the district court at the time of the pretrial ruling; the district court's decision was made solely on the written arguments of the parties and the language of the Facebook posts. While the Facebook statements indicate a certain level of aggressiveness and desire to fight, the posts do not identify a specific person as the target of that aggressiveness and therefore, the applicability to Hall, specifically, is speculative.

Since the Facebook statements are speculative, and therefore not relevant, they are not admissible hearsay under I.R.E. 803(3)'s "state of mind" hearsay exception. Just as the district court could not read context and factual support into the statements on the briefing of the parties, we cannot use evidence that was not before the district court at the time of the ruling to find error. The district court's ruling to exclude the Facebook statements as speculative and irrelevant was not an abuse of discretion.

## C. The District Court Did Not Err in Admitting Evidence of the Concealed Weapons Course Curriculum

Joseph Toluse, a Use of Deadly Force instructor, testified in the State's case-in-chief about the curriculum of the concealed weapons course that Hall attended in November 2006, in order to obtain a permit to carry a concealed weapon. Over Hall's objection to the testimony on relevance grounds, the district court determined the testimony was relevant and allowed Toluse

to offer limited testimony. The district court found the evidence to be relevant because there was evidence that K.H. purchased a weapon for Hall, Hall had a concealed weapons permit, Hall was known to carry that firearm, and Hall brought the weapon used to kill E.C. to Walgreens. The district court limited the testimony to the content of the curriculum at the time Hall took the course and did not allow Toluse to testify as to the law of self-defense or use of force. A limiting instruction, consistent with this ruling, was provided to the jury during Toluse's testimony. On appeal, Hall argues that the testimony was not relevant and that the district court erred in allowing the jury to hear the testimony that could have confused or misled the jury on this issue.

As previously stated, evidence that is relevant to a material and disputed issue concerning the crime charged is generally admissible. *Stevens*, 146 Idaho at 143, 191 P.3d at 221. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401; *Stevens*, 146 Idaho at 143, 191 P.3d at 221. Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *Johnson*, 148 Idaho at 671, 227 P.3d at 925. We review questions of relevance de novo. *Raudebaugh*, 124 Idaho at 764, 864 P.2d at 602; *Aguilar*, 154 Idaho at 203, 296 P.3d at 409. The trial court's balancing of the probative value of the evidence against the danger of unfair prejudice will not be disturbed absent a showing that the trial court abused its discretion. *Folk*, 157 Idaho at 876-77, 341 P.3d at 593-94. In reviewing a trial court's decision to admit challenged evidence, this Court will defer to the trial court's findings of fact that are supported by substantial and competent evidence because it is within the power of the trial court to "assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences." *State v. Besaw*, 155 Idaho 134, 140, 306 P.3d 219, 225 (Ct. App. 2013). This Court will not re-examine the evidence and substitute our judgment for that of the trial court at the time of the contested evidentiary ruling when there is substantial and competent evidence, and the trial court did not abuse its discretion in making this decision. *Id*. at 141, 306 P.2d at 226. Even when a trial court admits relevant evidence, it may determine that it should limit the extent to which the jury may use that evidence. In that event, the district court may cure any potential prejudice with a limiting instruction to the jury. *State v. Parmer*, 147 Idaho 210, 222, 207 P.3d 186, 198 (Ct. App. 2009). In this situation, we presume that the jury followed the court's instructions and

reviewed the trial court's decision to admit the evidence with the limiting instruction for abuse of discretion. *Id*.

The district court, in exercising its discretion to admit evidence, applied the I.R.E. 403 balancing test and determined that the limited testimony of Toluse was probative given the evidence in the record about Hall's possession and use of the firearm used to kill E.C. There was substantial and competent evidence in the record that K.H. purchased the weapon used to shoot E.C., that the defendant was known to carry a concealed weapon, and that he was known to carry the firearm used to kill E.C. The district court determined that Hall's knowledge and experience with the weapon was a fact of consequence and thus, relevant to the issue of who was the first aggressor. In addition, the court found that the training Hall received to obtain his concealed weapons permit was relevant and the probative value of this evidence outweighed any potential prejudice to Hall. This Court finds that the district court properly analyzed the evidence under the I.R.E. 403 balancing test.

In addition, the district court further limited any potential prejudice from the testimony by limiting Toluse's testimony to the curriculum of the concealed weapons course and giving the jury the limiting instruction. The district court did not abuse its discretion in admitting the limited testimony of Toluse. Further, the limiting instruction provided to the jury was proper and minimized any potential prejudice to the defendant that might have arisen from Mr. Toluse's testimony on the concealed weapons course curriculum. The district court's decision to admit the limited testimony of Toluse is affirmed.

## III.

## CONCLUSION

The district court did not err in failing to give Hall's modified jury instruction consistent with I.C. § 18-4009(1), the district court correctly instructed the jury on self-defense, and the district court did not abuse its discretion in either excluding E.C.'s Facebook posts or admitting the testimony of Toluse. Thus, we affirm the judgment of conviction entered.

Chief Judge MELANSON and Judge GUTIERREZ **CONCUR**.